BRUNETTI, Circuit Judge.
 

 Plaintiff-appellant Lawrence Hamilton appeals the district court’s grant of summary judgment for Defendant-appellee State Farm Fire and Casualty Company on Hamilton’s bad faith and breach of contract claims. We hold that Hamilton is judicially estopped from asserting these claims, and affirm.
 

 FACTS
 

 This action arises out of a claim that Hamilton filed under his State Farm homeowners’ insurance policy. Hamilton purchased a house in Los Angeles in 1992 and insured the house with State Farm. Pursuant to California Insurance Code § 2070, the insurance policy contained a “concealment or fraud” provision, which renders coverage null and void if the policyholder should intentionally conceal or misrepresent any material fact or circumstance relating to the insurance policy. In January 1996, Hamilton completed an ambitious and expensive remodel of the house. He then rented the house to Dr. Edwin Floyd and family.
 

 The Floyds experienced financial difficulties and stopped paying Hamilton rent in February 1997. Hamilton initiated eviction proceedings against the Floyds, and they vacated the house on May 28, 1997. On the morning of May 29, 1997, Hamilton reclaimed possession of the house and performed an inspection accompanied by a Sheriffs deputy, finding the house to be in good condition. Hamilton then left the house and claimed that he did not return until the following morning.
 

 At 6:22 a.m. on May 30, 1997, Westec Security Company responded to a short-circuit signal from the alarm system in the house, and found that the house was partially flooded because several second floor water supply lines had been disconnected. Hamilton made a claim to State Farm for the water damage and the loss of numerous items he claimed were stolen from the house, including: 1) four uninstalled Viking and Sub-Zero brand appliances; 2) uninstalled marble counter-tops; and 3) various installed fixtures, including four valuable “Strauss” brand chandeliers. From the outset of the claim, Hamilton blamed the Floyds for vandalizing the house and stealing his property.
 

 State Farm was apparently suspicious of the claim and conducted an investigation to determine its validity. A State Farm adjuster toured the house with Hamilton and took his recorded statements on both June 18, 1997 and July 1, 1997. State Farm also interviewed and took statements from many other witnesses in June through September 1997. During the time State
 
 *781
 
 Farm was investigating Hamilton’s claim, Hamilton was experiencing his own financial difficulties. He had been unable to make his mortgage payments on the house without the rent income from the Floyds, and had also accumulated significant credit card debt. Because of Hamilton’s mortgage default, the house was set to be sold at a trustee’s sale on November 10, 1997.
 

 Hamilton needed the insurance money from State Farm in order to keep the house, and enlisted the help of several lawyers to put pressure on State Farm to pay his claim. Hamilton’s lawyers wrote letters to State Farm on August 4, 1997 and October 16, 1997; both letters emphasized the importance of prompt settlement to avoid foreclosure, claimed that State Farm might be handling the claim in bad faith, and threatened litigation if the claim were not quickly paid. State Farm made no attempt to pay Hamilton’s claim in response to the letters. The investigation of the circumstances surrounding the claim had convinced State Farm that Hamilton was probably responsible for the vandalism and theft, and that he had at least violated the policy’s concealment or fraud provision, voiding coverage. On October 31, 1997, Hamilton filed for Chapter 7 bankruptcy. State Farm denied the claim and voided coverage under the policy’s concealment or fraud provision only a few days after Hamilton filed for bankruptcy. In a November 3, 1997 letter, State Farm advised Hamilton that the claim was denied on the basis that Hamilton had failed to produce documents in support of his claim, that Hamilton had misrepresented the extent of his financial difficulties, his whereabouts on May 29, 1997, and the existence or location of the allegedly stolen appliances.
 

 Hamilton filed his bankruptcy schedules on November 14, 1997, listing a $160,000 residential vandalism
 
 loss
 
 against his estate in his Chapter 7 Financial Statement, but failing to list the corresponding claims against State Farm as
 
 assets
 
 of the estate. On Schedule B, Question 20, under the heading “Other contingent and nonliqui-dated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims,” Hamilton listed “None,” ignoring his insurance and bad faith claims against State Farm as assets of the bankruptcy estate. The bankruptcy court discharged Hamilton’s debts on April 6, 1998 based on the false information he provided in his Chapter 7 schedules and Financial Statement.
 

 The bankruptcy trustee noticed that Hamilton had listed a large vandalism loss and wrote Hamilton a May 30, 1998 letter to determine whether Hamilton was pursuing any insurance claims to recover the amount of the loss. The trustee requested “correspondence or other writings concerning said vandalism, including any correspondence with insurance companies to recover the amount of the vandalism.” The trustee sent Hamilton another letter on April 21, 1998 requesting information regarding the vandalism loss. Hamilton wrote a letter in return, but did not provide any additional information about the vandalism loss or claims against State Farm.
 

 Consequently, the trustee filed a motion to dismiss Hamilton’s bankruptcy. The trustee’s motion listed bad faith, lack of truthfulness under oath, and failure to cooperate as the bases for dismissal. In July 1998, the court dismissed Hamilton’s Chapter 7 bankruptcy and vacated the discharge of his debts.
 

 On October 27, 1998, Hamilton filed suit against State Farm in Los Angeles County Superior Court, alleging breach of the covenant of good faith and fair dealing and breach of contract, and State Farm removed the action to the district court.
 
 *782
 
 State Farm filed a motion to dismiss for summary judgment on December 29, 1999, arguing that it was entitled to summary judgment because Hamilton had misrepresented numerous material facts, several of which voided Hamilton’s coverage under the concealment or fraud provision. State Farm also argued that Hamilton’s claim was barred by the doctrine of judicial es-toppel, because he had failed to list his insurance claim and pending lawsuit against State Farm on his Chapter 7 Bankruptcy schedules, and the bankruptcy court had discharged Hamilton’s debts because of his omissions.
 

 The district court granted State Farm’s motion, finding that Hamilton had failed to raise a genuine issue of material fact as to the falsity of his representations. The court also held that Hamilton’s claim was barred by the doctrine of judicial estoppel because Hamilton took contradictory positions by first failing to amend his bankruptcy schedules to include his insurance claim and pending bad faith action against State Farm, and then persisting in his attempts to recover on the claims against State Farm.
 

 STANDARD OF REVIEW
 

 We review the district court’s grant of summary judgment
 
 de novo. Clicks Billiards Inc. v. Sixshooters, Inc.,
 
 251 F.3d 1252, 1257 (9th Cir.2001). We will only affirm if, viewing that evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the district court correctly applied the relevant substantive law.
 
 Balint v. Carson City,
 
 180 F.3d 1047, 1050 (9th Cir.1999) (en banc). We review the district court’s application of the doctrine of judicial estoppel to the facts of this case for an abuse of discretion.
 
 Broussard v. University of California,
 
 192 F.3d 1252, 1255 (9th Cir.1999).
 

 DISCUSSION
 

 Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position.
 
 Rissetto v. Plumbers & Steamfitters Local 34-3,
 
 94 F.3d 597, 600-601 (9th Cir.1996);
 
 Russell v. Rolfs,
 
 893 F.2d 1033, 1037 (9th Cir.1990). This court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of “general consideration^] of the orderly administration of justice and regard for the dignity of judicial proceedings,” and to “protect against a litigant playing fast and loose with the courts.”
 
 Russell,
 
 893 F.2d at 1037.
 

 The United States Supreme Court recently listed three factors that courts
 
 may
 
 consider in determining whether to apply the doctrine of judicial estoppel:
 

 [S]everal factors typically inform the decision whether to apply the doctrine in a particular case: First, a party’s later position must be “clearly inconsistent” with its earlier position.
 
 United States v. Hook,
 
 195 F.3d 299, 306 (C.A.7 1999);
 
 In re Coastal Plains, Inc.,
 
 179 F.3d 197, 206 (C.A.5 1999);
 
 Hossaini v. Western Mo. Medical Center,
 
 140 F.3d 1140, 1143 (C.A.8 1998);
 
 Maharaj v. Bankamenca Corp.,
 
 128 F.3d 94, 98 (C.A.2 1997). Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party’s earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create “the perception that either the first or the second court was misled,”
 
 Edwards,
 
 690 F.2d at 599. Absent success in a prior proceeding, a party’s later inconsistent position intro
 
 *783
 
 duces no “risk of inconsistent court determinations,”
 
 United States v. C.I.T. Constr. Inc.,
 
 944 F.2d 253, 259 (C.A.5 1991), and thus no threat to judicial integrity.
 
 See Hook,
 
 195 F.3d at 306;
 
 Maharaj,
 
 128 F.3d at 98;
 
 Konstantinidis,
 
 626 F.2d at 939. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.
 
 See Davis,
 
 156 U.S. at 689, 15 S.Ct. 555, 39 L.Ed. 578;
 
 Philadelphia, W., & B.R. Co. v. Howard,
 
 13 How. 307, 335-337, 14 L.Ed. 157 (1851);
 
 Scarano,
 
 203 F.2d at 513 (judicial estop-pel forbids use of “intentional self-contradiction ... as a means of obtaining unfair advantage”);
 
 see also
 
 18 Wright § 4477, p. 782. In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine’s application in specific factual contexts. In this case, we simply observe that the factors above firmly tip the balance of equities in favor of barring New Hampshire’s present complaint.
 

 New Hampshire v. Maine,
 
 532 U.S. 742, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968 (2001).
 

 This court has restricted the application of judicial estoppel to cases where the court relied on, or “accepted,” the party’s previous inconsistent position.
 
 Interstate Fire & Casualty Co. v. Underwriters at Lloyd’s, London,
 
 139 F.3d 1234, 1239 (9th Cir.1998);
 
 Masayesva v. Hale,
 
 118 F.3d 1371, 1382 (9th Cir.1997). The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases.
 
 Rissetto,
 
 94 F.3d at 605 (“We now make it explicit that the doctrine of judicial estop-pel is not confined to inconsistent positions taken in the same litigation”);
 
 Astor Chaujfeured Limousine Co. v. Runnfeldt Investment Corp.,
 
 910 F.2d 1540, 1548 (7th Cir.1990) (estoppel is even more appropriate where the incompatible statements are made in two different cases, since “[inconsistent positions in different suits are much harder to justify” than inconsistent pleadings within one suit). In the bankruptcy context, a party is judicially es-topped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor’s schedules or disclosure statements.
 
 Hay v. First Interstate Bank of Kalispell, N.A.,
 
 978 F.2d 555, 557 (9th Cir.1992) (failure to give notice of a potential cause of action in bankruptcy schedules and Disclosure Statements estops the debtor from prosecuting that cause of action);
 
 In re Coastal Plains,
 
 179 F.3d 197, 208 (5th Cir.1999),
 
 cert. denied,
 
 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000) (holding that a debtor is barred from bringing claims not disclosed in its bankruptcy schedules);
 
 Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.,
 
 989 F.2d 570, 572 (1st Cir.),
 
 cert. denied,
 
 510 U.S. 931, 114 S.Ct. 344, 126 L.Ed.2d 309 (1993) (debtor who obtained relief on the representation that no claims existed cannot resurrect such claims and obtain relief on the opposite basis);
 
 Oneida Motor Freight, Inc. v. United Jersey Bank,
 
 848 F.2d 414, 419 (3rd Cir.),
 
 cert. denied,
 
 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988) (debtor’s failure to list potential claims against a creditor “worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect,” and debtor is estopped by reason of such failure to disclose).
 

 
 *784
 
 Hamilton clearly asserted inconsistent positions. He failed to list his claims against State Farm as assets on his bankruptcy schedules, and then later sued State Farm on the same claims. Hamilton argues that the trustee was fully aware of his pending claims against State Farm, but the trustee denied having knowledge of the claims. Regardless, notifying the trustee by mail or otherwise is insufficient to escape judicial estoppel. 11 U.S.C. § 521(1) provides that, “[t]he debtor shall file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor’s financial affairs.” Hamilton is required to have amended his disclosure statements and schedules to provide the requisite notice, because of the express duties of disclosure imposed on him by 11 U.S.C. 521(1), and because both the court and Hamilton’s creditors base their actions on the disclosure statements and schedules.
 
 See In re Coastal Plains,
 
 179 F.3d at 206.
 

 Hamilton also argues that the bankruptcy court did not “accept” his prior assertion for the purposes of judicial estoppel. Hamilton concedes that the bankruptcy court relied on his failure to include his claims against State Farm as assets when it discharged his debts, but that the court’s subsequent dismissal of his bankruptcy vacated the discharge of debt, and that the discharge must have been permanent to satisfy the judicial acceptance requirement of judicial estoppel. We reject this argument. This court has held that a debtor who failed to disclose a pending claim as an asset in a bankruptcy proceeding where debts were
 
 permanently
 
 discharged was estopped from pursuing such claim in a subsequent proceeding.
 
 Hay,
 
 978 F.2d at 557.
 

 We now hold that Hamilton is precluded from pursuing claims about which he had knowledge, but did not disclose, during his bankruptcy proceedings, and that a discharge of debt by a bankruptcy court, under these circumstances, is sufficient acceptance to provide a basis for judicial estoppel, even if the discharge is later vacated. Our holding does not imply that the bankruptcy court must actually discharge debts before the judicial acceptance prong may be satisfied. The bankruptcy court may “accept” the debtor’s assertions by relying on the debtor’s nondisclosure of potential claims in many other ways.
 
 See, e.g., In re Coastal Plains,
 
 179 F.3d at 210 (finding that judicial acceptance was satisfied when the bankruptcy court lifted a stay based in part on the debtor’s nondisclosure in its bankruptcy schedules and in a lift-stay stipulation);
 
 Donaldson v. Bernstein,
 
 104 F.3d 547, 555-56 (3rd Cir.1997) (holding that judicial acceptance was satisfied when the court approved the debtor’s plan of reorganization).
 

 It is immaterial that Hamilton did not file this action against State Farm for one year after filing for bankruptcy. Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset.
 
 Hay,
 
 978 F.2d at 557 (“We recognize that
 
 all
 
 facts were not known to Desert Mountain at that time, but enough was known to require notification of the asset to the bankruptcy court.”);
 
 In re Coastal Plains,
 
 179 F.3d at 208 (quoting
 
 Youngblood Group v. Lufkin Fed. Sav. & Loan Ass’n,
 
 932 F.Supp. 859, 867 (E.D.Tex.1996)) (“[I]f the debtor has enough information ... prior to confirmation to suggest that it may have a possible cause of action, then that is a
 
 *785
 
 known cause of action such that it must be disclosed”) (internal quotations omitted). Hamilton knew of all the material facts surrounding the damage to the house and State Farm’s investigation and denial of his claim at the time he filed his bankruptcy schedules and for many months before pursuing legal action. Hamilton’s knowledge that a cause of action against State Farm existed at the time he filed for bankruptcy and completed his bankruptcy schedules and disclosure statements is clearly evidenced by the letters that his lawyers wrote to State Farm on August 4, 1997 and October 16, 1997, both of which contained threats of litigation.
 

 In this case, we must invoke judicial estoppel to protect the integrity of the bankruptcy process. The debtor, once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by listing all his assets. The Bankruptcy Code and Rules “impose upon the bankruptcy debtors an express, affirmative duty to disclose all assets,
 
 including contingent and unliquidated claims.” In re Coastal Plains,
 
 179 F.3d at 207-208;
 
 Hay,
 
 978 F.2d at 557; 11 U.S.C. § 521(1). The debtor’s duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding.
 
 In re Coastal Plains,
 
 179 F.3d at 208;
 
 Youngblood Group v. Lufkin Fed. Sav. & Loan Ass’n,
 
 932 F.Supp. at 867; Fed. R. Bankr.P. 1009(a) (schedules may be amended as a matter of course before the case is closed). Hamilton’s failure to list his claims against State Farm as assets on his bankruptcy schedules deceived the bankruptcy court and Hamilton’s creditors, who relied on the schedules to determine wh'at action, if any, they would take in the matter. Hamilton did enjoy the benefit of both an automatic stay and a discharge of debt in his Chapter 7 bankruptcy proceeding.'
 
 See New Hampshire v. Maine,
 
 121 S.Ct. at 1815 (noting that courts may consider whether the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped). However, it is his failure to disclose assets on his bankruptcy schedules that provides the most compelling reason to bar him from prosecuting claims against State Farm.
 
 In re Coastal Plains,
 
 179 F.3d at 208.
 

 We agree with the Fifth Circuit’s analysis in
 
 In re Coastal Plains
 
 when it said, “[I]t is very important that a debtor’s bankruptcy schedules and statement of affairs be as accurate as possible, because that is the initial information upon which ah creditors rely.”
 
 Id.
 
 The
 
 Coastal
 
 court further defined the essence of judicial es-toppel in this bankruptcy context:
 

 The rationale for ... decisions [invoking judicial estoppel to prevent a party who •failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that the
 
 integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.
 
 The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding.
 
 The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.
 

 Id.
 
 (alteration in original) (quoting
 
 Rosenshein v. Kleban,
 
 918 F.Supp. 98, 104 (S.D.N.Y.1996)). We agree completely with this analysis.
 

 
 *786
 
 Accordingly, Hamilton is judicially es-topped from pursuing claims against State Farm, and we do not address any other issues raised in this appeal.
 

 AFFIRMED.