**In re Vickie Lynn MARSHALL, Debtor.**

**E. Pierce Marshall, Plaintiff,**

**v.**

**Vickie Lynn Marshall, Defendant,**

**and related counterclaim.**

**Bankruptcy No. LA 96–12510–SB.**
**Adversary No. LA 96–01838–SB.**

United States Bankruptcy Court, C.D. California.

Feb. 26, 2002.

Joel B. Weinberg, Biegenzahn Weinberg, Woodland Hills, CA, for debtor.

**First Amended Opinion on Application of Bankruptcy Discharge**

SAMUEL L. BUFFORD, Bankruptcy Judge.

## I. Introduction

This proceeding on remand from the district court concerns the applicability of the debtor's discharge under a chapter 11[1] plan to post-discharge attorneys' fees awarded in a related Texas probate case. The court finds that the attorneys' fees and costs awarded by the Texas court have been discharged because they are rooted in pre-discharge (and indeed prepetition) events, even though the fees and costs were incurred after the debtor's discharge was granted. In addition, the court finds that judicial estoppel prohibits the claim for costs and attorneys' fees. In consequence, the attorneys' fees and costs are discharged.

## II. Facts

### A. Background

Debtor Vickie Lynn Marshall (Vickie)[2] is the surviving widow of J. Howard Marshall II (J. Howard), who died on August 4, 1995. J. Howard married Vickie (also known as Anna Nicole Smith) on June 27, 1994 after two and a half years of courtship. At the time of their marriage, Vickie was 26 years old and J. Howard was 89 years old.

Vickie is a figure of some notoriety because of her career as a model and actress.[3] J. Howard was also a figure of some notoriety in his own right and was said to be either the richest or second-richest man in Texas at the time of his death. The exact amount of his wealth at the time of his death is disputed, but estimates put it at as high as $2 billion.

It is undisputed that J. Howard lavished great sums of money on Vickie during their courtship and marriage. Nonetheless, he did not explicitly provide for Vickie in his will. According to Vickie, however, J. Howard had promised her that she would receive substantial wealth and be taken care of after his death. Pierce Marshall (Pierce), J. Howard's adult son from a former marriage, contests whether J. Howard ever made such a promise.

The magnitude of the sums of money involved in J. Howard's estate has sparked intensely contested litigation on several fronts. On January 25, 1996, a few months after J. Howard's death, Vickie filed her chapter 11 bankruptcy in this court.[4]

In an adversary proceeding responding to a claim filed by Pierce,[5] Vickie contend-

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (West 2001) and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. Because all the principals in this adversary proceeding share the same last name, the court will refer to them by their given names, as is customary in cases involving family matters.

3. Prior to their marriage, J. Howard had assisted in developing her career.

4. Apparently the precipitation event for Vickie's bankruptcy filing was her suffering a default judgment of more than $700,000 in Los Angeles County Superior Court in a case brought by her former housekeeper for sexual harassment.

ed that Pierce tortiously interfered with her expected *inter vivos* gift from her late husband.[6] Vickie's counterclaims against Pierce went to trial in this court in the fall of 1999. On October 6, 2000 this court issued an Amended Memorandum of Decision Following Trial ("Amended Decision"), *Marshall v. Marshall (In re Marshall)*, 253 B.R. 550 (Bankr.C.D.Cal.2000). Based in large part on facts found against Pierce as sanctions for his discovery abuses, the court concluded that Pierce tortiously interfered with Vickie's expectations of an *inter vivos* gift and awarded $449,754,134 in compensatory damages. Subsequently, this court also awarded $25 million in punitive damages and issued a judgment.

Pierce appealed the bankruptcy court's judgment to the district court. On June 19, 2001 that court entered an Amended Order Regarding Subject Matter Jurisdiction, *Marshall v. Marshall (In re Marshall)*, 264 B.R. 609 (C.D.Cal.2001), in which it reversed on constitutional grounds this court's ruling that the adversary proceeding was a core matter pursuant to 28 U.S.C. § 157(c)(1) (West 2001). *De novo* review of this court's findings in the adversary proceeding is pending in the district court.

## B. The Discharge Order

On March 25, 1999 this court entered its discharge order,[7] effective March 8, 1999

(the date of the entry of the order confirming Vickie's plan of reorganization), which stated:

> Debtor is hereby discharged from all claims that arose before the date of this Order ... whether or not: (a) a proof of claim was filed ... or (c) the holder of the claim has accepted the plan.

The order further stated:

> Any judgment ... hereafter obtained in any court other than this court is null and void as a determination of the personal liability of the debtor with respect to any debts discharged under 11 U.S.C. 1141.... All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by this order are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect such debts as personal liabilities of the debtor.

Article IX of the plan of reorganization specifically reserved the jurisdiction of this court "to protect the assets of ... the Reorganized Debtor from creditor actions which the Plan and Order of Confirmation disallow or affect...."

## C. The Texas Litigation

J. Howard's estate remains in probate in Texas ("the Texas litigation").[8] While the adversary proceeding in this court was

---

**5.** An objection to a creditor's claim that joins a demand for relief of the kind specified in Rule 7001 becomes an adversary proceeding. *See* Rule 3007.

**6.** Vickie filed a similar claim in the Texas probate case, where she contended that Pierce interfered both with the prospective *inter vivos* gift and with a prospective inheritance.

**7.** Pursuant to the discharge order, all of Vickie's prepetition debts were discharged except

for a pending non-dischargeability claim that Pierce had brought for defamation. The court later granted summary judgment to Vickie on this issue, which made the discharge complete.

**8.** Shortly after J. Howard's death, probate proceedings were initiated in Louisiana, but were dismissed when the Louisiana Supreme Court found that the Louisiana courts lacked jurisdiction.

pending, Vickie filed a backup claim on January 23, 1998 in the Texas litigation.

Vickie dismissed her claims in the Texas litigation a few days after this court issued judgment in her favor. Nonetheless, Pierce thereafter amended his operative pleadings in that case on February 9, 2001 to pursue additional claims against Vickie.

The Texas litigation was tried to a jury from September 18, 2000 to February 19, 2001. The judge in that trial submitted 87 questions to the jury. The only question involving Vickie was Question 66, which stated: "Do you find that Vickie Lynn Marshall did not have an agreement with J. Howard Marshall, II, that he would give her one-half of all of his property?" The jury found that there was no such contract, and Vickie has never contended that there was.[9]

Judgment after a jury trial was entered in the Texas litigation on August 15, 2001. The Texas probate court awarded Pierce $541,000 against Vickie in fees and expenses. In addition, that court awarded court costs and interest, the amount of which apparently remain undetermined. The fees awarded to Pierce were based entirely on Pierce's legal expenses for the trial of the Texas litigation, which took place after the discharge was entered in this chapter 11 case.

After oral argument on the motion before this court, Pierce went back to the Texas probate court on October 25, 2001 and obtained a modification of that court's judgment which states in part, "the Court finds that all decrees pertaining to [Vickie] as ordered herein do not arise from any conduct that occurred on or before March 8, 1999."[10]

**D. Contempt Proceedings in this Court**

On several occasions Vickie has brought motions requesting that this court find Pierce in contempt of the discharge order for pursuing claims against her in the Texas litigation. Vickie brought her first emergency contempt application in response to Pierce's February 9, 2001 amendments in the Texas litigation, and the court set a hearing on February 14, 2001. After the hearing this court issued a written order that required Pierce to remove all pre-discharge claims against Vickie in the Texas litigation, and reserved decision on the remainder of the contentions. In a subsequent hearing on March 7, 2001, this court orally ordered Pierce's counsel not to proceed in the Texas probate court on Question 66.

Pursuant to a further contempt application, on March 16, 2001 this court issued a further order to show cause that was set for hearing on March 21, 2001. The court's order on that hearing, issued on April 20, 2001, enjoined Pierce from:

pursuing or seeking, directly or indirectly, any award, judgment or determination of any claims or allegations previously determined or that could have been determined by this Court in its Prior Decisions and Judgment, including without limitation pursuing Question No 66 in the Texas action. . . .

The court further ordered that Pierce immediately dismiss any claims seeking any such relief.

After further contempt proceedings on May 15, 2001, this court issued an order

---

9. The litigation in this court has proceeded from the outset on the theory that J. Howard had made a promise of a gift to Vickie, not a contract. The only confusion on this issue has been whether the promised gift was to be testamentary or *inter vivos*.

10. The judgment in the Texas litigation was further modified on December 7, 2001 in respects not material to this case.

dated May 16, 2001 that permitted Pierce to proceed with the contract issue in the Texas trial on two grounds: Vickie had never contended that she had a contract with her husband to receive part of his property, and Pierce promised and represented to this court that he would use any judgment of the Texas court solely for setoff purposes.

The district court has reversed this court's orders of February 14, 2001 and April 20, 2001 and remanded them for reconsideration in light of this court's May 16, 2001 order and in light of the district court's vacating this court's judgment in the adversary proceeding. The district court further stated that this court should consider whether it was procedurally proper to issue an injunction in the adversary proceeding, where the injunction was solely based on Vickie's discharge.

### III. Contentions of the Parties

Pierce argues that the attorneys' fees and costs awarded against Vickie in the Texas litigation arose entirely after the discharge was granted in this case, and that in consequence they are not affected by the discharge. Vickie argues that the claim that formed the basis for these fees arose prepetition, and that any liability on her part arising therefrom was discharged by the chapter 11 discharge.

### IV. Analysis

■ The Congressional grant of bankruptcy jurisdiction includes the power to determine the scope of the discharge that Vickie received in this case. The parties do not contest that this is a core proceeding.

### A. Scope of the Discharge Injunction

The filing of a bankruptcy case immediately imposes an automatic stay on virtually all creditor collection activities against the debtor. *See* § 362. This automatic stay does not last indefinitely: it terminates when a discharge is granted or denied. *See* § 362(c)(2)(C).[11] In this case the discharge was granted effective March 9, 1998.

Upon the grant of a discharge in a chapter 11 case, the automatic stay is replaced with the discharge injunction provided by § 1141(d)(1), which provides in relevant part:

Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan....

■ The discharge injunction is permanent. It survives the bankruptcy case, and applies forever with respect to each discharged debt. Again, the Senate Report explains the impact of the Injunction:

The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts. This paragraph ...

---

**11.** In addition, the automatic stay terminates as to an act against property of the estate when the property exits from the estate, such as by sale or foreclosure. *See* § 362(c)(1). If none of these events occurs, the automatic stay terminates when the case is dismissed or closed, whichever happens first. *See* § 362(c)(2).

cover[s] any act to collect, such as dunning by telephone or letter, or indirectly through friends, relatives, or employers, harassment, threats of repossession and the like.

S.Rep. No. 95–989, at 80 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5866. The permanency of the discharge injunction contrasts with the temporary character of the automatic stay.

■ The basic policy of the discharge injunction is to excuse a debtor from any obligation whatever to go to court to defend against a discharged debt. In this respect the discharge injunction is different from a simple discharge of indebtedness, and like the automatic stay. A simple discharge would function as a defense to any action to collect a discharged debt, but it would have to be invoked in defense to litigation. The discharge injunction goes much further: it excuses the debtor from appearing to defend, it enjoins all discharged creditors from bringing or continuing any action with respect to a discharged debt, and it renders void any judgment granted by another court in violation of the discharge. The legislative history states:

> The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts … The change … is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it. In effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that.

S.Rep. No. 95–989, at 80 (1978), *reprinted in* 1978 U.S.C.C.A.N. pp. 5787, 5866.

### B. Application to this Case

■ Under Ninth Circuit case law, "a claim arises, for the purposes of discharge in bankruptcy, at the time of the events giving rise to the claim, not at the time plaintiff is first able to file suit on the claim." *O'Loghlin v. County of Orange,* 229 F.3d 871, 874 (9th Cir.2000). This rule is subject to two exceptions recognized in Ninth Circuit case law. *See id.* at 873–76.

■ The first exception applies where post-discharge conduct is so related that the pre- and post-discharge conduct is a "continuing violation." *Id.* at 876. When this occurs, damages based on conduct after the date of the discharge are not discharged, but pre-discharge damages are discharged. *See id.* The consequence of the "continuing violation" doctrine is that the debtor cannot avoid liability for post-discharge conduct. The rationale is that a debtor should not be permitted to use pre-discharge misconduct to avoid liability for similar post-discharge conduct. *See id.* at 875. Pierce does not contend that this exception applies in this case.

■ The second exception, on which Pierce relies, applies where the post-discharge conduct is "sufficiently independent" of pre-discharge conduct that it separately supports a post-discharge debt. Independent conduct by a debtor after the discharge may give rise to a debt that is not subject to the bankruptcy discharge. *See id.* at 876.

■ The application of the discharge injunction in this case turns on what is the "claim" at issue. Pierce contends that his claim arose after the discharge, when he incurred the attorneys' fees at issue. Pierce claims that Vickie's wrong consists in her refusal to relinquish her claim to probate assets of her deceased husband J. Howard, which required Pierce to obtain a declaratory judgment that she had no such entitlement.

The court finds that this case is governed by two contrary Ninth Circuit decisions interpreting the second exception, in

both of which the Ninth Circuit found that the attorneys' fees at issue were prepetition debts.

*Kadjevich v. Kadjevich (In re Kadjevich),* 220 F.3d 1016 (9th Cir.2000), involved a state court prepetition action for fraudulent breach of a settlement of a partition action arising out of joint ownership of several industrial properties. Postpetition the parties settled again, and again the debtor breached the settlement agreement. The state court thereafter awarded judgment on the underlying fraud action, and awarded $150,000 in attorneys' fees and costs (under California Civil Code § 128.5) for bad faith breach of the postpetition settlement.

The Ninth Circuit in *Kadjevich* found that the source of the attorneys' fees award was the fraud action that was commenced prepetition in state court, which gave rise to the fee shifting award under § 128.5. *Kadjevich,* 220 F.3d at 1020. The Ninth Circuit ruled that the judgment was unitary, and that all of it must be considered prepetition. *See id.*

In deciding *Kadjevich,* the Ninth Circuit relied in substantial degree on *Abercrombie v. Hayden Corp. (In re Abercrombie),* 139 F.3d 755 (9th Cir.1998), where the Ninth Circuit found that postpetition costs and expenses, including attorneys' fees, arising out of a prepetition contract are prepetition unsecured claims. *Accord, In re MTC Telemanagement Corp.,* 269 B.R. 44 (Bankr.N.D.Cal.2001) (following *Abercrombie*). The court in *Kadjevich* found no principled basis to distinguish an attorneys' fees claim based on a prepetition tort from a similar claim based on a prepetition contract. *See Kadjevich,* 220 F.3d at 1020.

In *Abercrombie* the debtor had prevailed in state court on a real estate contract claim prior to the filing of his chapter 11 bankruptcy case. After filing his bankruptcy case, the debtor's state court judg-

ment was reversed by the Oregon Supreme Court. The defendant thereafter sought to have the postpetition attorneys' fees paid as an administrative claim. The Ninth Circuit found that the fees could not be treated as a postpetition debt because the underlying claim did not arise out of a postpetition transaction. *Abercrombie,* 139 F.3d at 758.

As in this case, the defendant in *Abercrombie* argued that the defense of the appeal was postpetition conduct that qualified the debt as a postpetition debt. The defendant also argued that it was injured by the debtor's postpetition decision to continue defending the trial court judgment rather than conceding its invalidity in the Oregon Supreme Court. The Ninth Circuit rejected both of these arguments. *See id.* at 758; *accord, In re Hemingway Transp.,* 954 F.2d 1 (1st Cir.1992).

In contrast to this case, *O'Loghlin* illustrates the kind of conduct that is sufficiently independent to avoid the bankruptcy discharge. The plaintiff in that case, a psychiatric emergency nurse, alleged that her employer, the County of Orange, refused on three different occasions to accommodate her disability resulting from repeated on-the-job injuries to her arm. The Ninth Circuit found that Orange County's chapter 9 discharge (which is the same as the chapter 11 discharge in all relevant respects) barred her first two claims, one of which arose before the county's bankruptcy filing and the second of which arose before the discharge. *O'Loghlin v. County of Orange,* 229 F.3d 871, 874 (9th Cir.2000). However, the circuit court found that the third refusal, after the bankruptcy discharge, was a separate violation that was sufficiently independent of the other wrongful acts to support an undischarged claim. *See id.* at 874–75.

In this case there is no such post-discharge conduct by Vickie to provide a basis for an independent post-discharge claim that can support the award of attorneys' fees and costs in the Texas litigation. Vickie's claim in the Texas litigation was rooted exclusively in events that occurred during J. Howard's lifetime, long before Vickie's bankruptcy discharge. The only conduct that she carried out after her discharge was to continue to press her pre-discharge claim in the pending probate case until January, 2001, after this court issued judgment in her favor. As in *Kadjevich* and *Abercrombie*, Vickie's postpetition refusal to relinquish her claim in the Texas litigation is not sufficiently independent of the prepetition conduct giving rise to the claim to qualify for an exception under the *O'Loghlin* rule.

■ There is one substantial difference between this case and both *Kadjevich* and *Abercrombie*. Both of those cases involved claims that the attorneys' fees at issue were administrative expenses, while in this case Pierce contends that his award of attorneys' fees is a post-discharge expense chargeable to Vickie. However, the court finds that this difference is irrelevant to the issue before the court. The teaching of *Kadjevich* and *Abercrombie* is that attorneys' fees and costs arising in postpetition litigation rooted in prepetition conduct must be treated as prepetition debt, not postpetition debt. In consequence, the costs and attorneys' fees awarded against Vickie in the Texas litigation are subject to the discharge in this case, and are entirely void.

In addition, there is no independent right to attorneys' fees in American law. *See Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975) ("In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.") *Also see Chambers v. NASCO, Inc.*, 501 U.S. 32, 45, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991) (noting three exceptions to the American Rule: where a party's litigation efforts directly benefit others, as a sanction for contempt of court, and when a party has acted in bad faith) (citing *Alyeska* at 258–59, 95 S.Ct. 1612). None of these exceptions applies in this case.

■ A claim for attorneys' fees is derivative of another primary right, and arises only in connection with exercising or defending that right. This is true even where, as here, the right to attorneys' fees is based on statute.[12] A claim for attorneys' fees is part of the remedy (usually a minor part) for the harm caused in violating the right that gives rise to the claim. It is only the tail of the dog, and not the dog itself. The "dog" in this case is Vickie's claim that Pierce wrongfully prevented her from obtaining a gift from her husband, while he was alive, of one-half of the community property arising during their marriage. Pierce's alleged wrong occurred, if at all, during the marriage and not thereafter.

Thus the attorneys' fee award is inextricably tied to events in 1994 and 1995. It is entirely rooted in prepetition conduct and is merely a postpetition consequence thereof. Accordingly, under Ninth Circuit

---

12. The Texas statute applied by the Texas probate court is in accord. The Texas probate court awarded attorneys' fees pursuant to Texas Civil Practice Remedies Code § 37.009, which provides: "In any proceeding under this chapter [Declaratory Judgments], the court may award cost and rea-

sonable and necessary attorneys' fees as are equitable and just." In *Hitchcock Properties, Inc. v. Levering*, 776 S.W.2d 236, 239 (Tex. App.1989), the court affirmed that a counterclaim brought under § 37.009 merely to make a request for attorneys' fees is not proper.

law, it is subject to the discharge that Vickie received in this case.

The discharge prohibits Pierce from pursuing this claim against Vickie. Pursuit of the claim in the Texas litigation is a violation of Vickie's discharge injunction. Insofar as the judgment in the Texas litigation awards a money judgment against Vickie, it is a nullity and void.

### C. Modification of Texas Judgment

This court does not find persuasive the modification to the judgment that Pierce obtained in the Texas litigation after this motion was argued in this court. The modification provided that the attorneys' fees awarded therein arose entirely from Vickie's post-discharge conduct.

Federal courts have exclusive jurisdiction to determine whether a creditor's actions violate the discharge injunction. The leading Ninth Circuit case on this subject is *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074 (9th Cir.2000), where the court found that federal courts have exclusive jurisdiction to determine all bankruptcy matters. *See id.* at 1080. Bankruptcy courts have the power to avoid state court judgments, to modify them or to discharge them. *See id.* at 1079. A state court's judgment (whether or not final) that falls within the federal courts' exclusive jurisdiction is subject to collateral attack in the federal courts. *See id.* "In short," the Ninth Circuit said, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Id.* (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995)).

Thus this court has exclusive jurisdiction to determine whether Pierce's actions against Vickie in the Texas litigation vio-

late the discharge Injunction in this case. This court also has jurisdiction to discharge the judgment against Vickie in that litigation. The court finds that the monetary judgment against Vickie in the Texas litigation is a violation of the discharge injunction and is null and void.

### D. Judicial Estoppel

This court held a hearing on March 7, 2001 concerning Pierce's conduct in the Texas litigation, and whether he was violating Vickie's discharge injunction in that litigation. Pierce's counsel represented to the court at that hearing that Pierce would remove from the Texas litigation all matters relating to Vickie. On April 20, 2001 this court issued an order requiring Pierce to dismiss immediately any claim against Vickie and "any pleading on which Question No. 66 [the only one relating to Vickie] is based and to desist from pursuing or seeking any award, judgment or determination regarding such allegations" in the Texas litigation. This order has never been appealed or altered, except by this court's order of May 16, 2001.

Without disclosure to this court, on April 6, 2001 Pierce's law firm filed a motion for judgment on Pierce's behalf in the Texas litigation (which was amended on April 10, 2001). The motion for judgment was accompanied by a proposed form of order that included a finding on Question 66 and an award of $541,000 in attorneys' fees against Vickie.

At a further hearing on May 15, 2001 Pierce's attorney Lee Ware represented to this court that "the issue insofar as compliance with the orders of this court are concerned, is moot. Your Honor directed Pierce Marshall . . . to withdraw and not proceed. They have withdrawn and are not proceeding on question 66." This representation was accompanied by a May 14, 2001 document that allegedly was filed in the Texas litigation, which withdrew Ques-

tion 66 from consideration by the Texas probate court. In reliance on Ware's representation, this court issued its May 16, 2001 order. Contrary to his representations to this court, Pierce never withdrew the damages request against Vickie in the Texas litigation. The court finds that this action was directly opposite to the representation that Pierce's counsel made to this court.

■ Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position and then later seeking an advantage by taking a clearly inconsistent position. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir.2001); *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600–601 (9th Cir.1996); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990). Ninth Circuit law invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings," and to "protect against a litigant playing fast and loose with the courts." *Hamilton*, 270 F.3d at 782; *Russell*, 893 F.2d at 1037.

The United States Supreme Court recently listed three factors that courts may consider in determining whether to apply the doctrine of judicial estoppel:

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." Absent success in a prior proceeding, a party's later inconsistent position introduces no risk

of inconsistent court determinations, and thus no threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.

*New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968 (2001) (citations omitted).

■ The Ninth Circuit has restricted the application of judicial estoppel to cases where the court relied on, or "accepted," the party's previous inconsistent position. *See Hamilton*, 270 F.3d at 783; *Interstate Fire & Casualty Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir.1998); *Masayesva v. Hale*, 118 F.3d 1371, 1382 (9th Cir.1997). The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation: it is also appropriate to bar litigants from making incompatible statements in two different cases. *See Hamilton*, 270 F.3d at 783; *Rissetto*, 94 F.3d at 605 ("We now make it explicit that the doctrine of judicial estoppel is not confined to inconsistent positions taken in the same litigation"); *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1548 (7th Cir.1990) (estoppel is even more appropriate where the incompatible statements are made in two different cases, since "[i]nconsistent positions in different suits are much harder to justify" than inconsistent pleadings within one suit).

■ The court finds that Pierce is judicially estopped from seeking any monetary award against Vickie. Pierce cannot be permitted to profit from his wrong in this matter. Insofar as the Texas probate court decision includes a monetary award against Vickie, it is a violation of the representations that Pierce's counsel made to this court, on which this court relied in permitting Pierce to proceed in the Texas probate action. For this additional reason the court finds that Pierce's Texas judgment against Vickie is void and unenforceable.

### E. Issues on Remand

The foregoing analysis derives solely from Vickie's discharge, and is based on applicable case law thereunder. It does not depend to any extent on this court's orders of February 14, 2001, April 20, 2001 or May 16, 2001. These orders were issued in implementation of the discharge injunction. The court's decision herein also does not depend to any extent on the court's findings and judgment issued in the adversary proceeding, which the district court has reversed on constitutional grounds.

The district court has reversed and remanded this court's February 14, 2001 and April 20, 2001 orders to clarify the impact of its *sua sponte* May 16, 2001 order on these prior orders. The district court has also stated that this court should consider the procedural propriety of issuing orders implementing the discharge injunction in the adversary proceeding.

The May 16, 2001 order was strictly a procedural order. It authorized the parties to proceed in the Texas litigation, and authorized the Texas probate court to issue a final judgment in that proceeding. Insofar as the prior orders prohibited Pierce from proceeding on Question 66 in the Texas litigation, they were vacated. As set out in detail in the May 16 order, this court granted this authorization in reliance on Pierce's representation (which turned out to be false) that he would use any judgment in the Texas litigation solely for setoff purposes. In addition, this court wanted to authorize the Texas probate court to complete its trial and enter judgment. This court considered it prudent to permit the Texas probate court to complete its lengthy trial proceeding, which lasted some five months, because it took that court several years and three judges to find a window of opportunity to conduct its trial. This court did not want to take action that may require that court to try its case a second time.

Notably, this court's May 16, 2001 order did not waive or alter the discharge injunction issued in this chapter 11 case. The May 16, 2001 order gave no authority to Pierce to proceed to obtain a money judgment against Vickie in the Texas litigation on any grounds.

This court assumed that both the Texas probate court and the parties would respect the discharge injunction issued in this case. The court finds that they failed to do so. In consequence, for the reasons stated above, the discharge injunction controls the validity of the Texas probate court judgment insofar as it affects Vickie.

Like other injunctions, the normal procedure to enforce a discharge injunction is contempt. In *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir.2002), for example, the Ninth Circuit stated that contempt is the appropriate remedy for a creditor's violation of the discharge injunction. *See id.* at 507; *accord, Henry v. Associates Home Equity Services, Inc.*, 266 B.R. 457, 477–78 (Bankr.C.D.Cal.2001).

Because the discharge injunction was issued in Vickie's main case, and not this adversary proceeding, it might appear that contempt proceedings should be brought in

the main case as well. Thus it might be improper to bring contempt proceedings in the adversary proceeding, as Vickie has done in this case.

However, where as here the enforcement of the discharge injunction involves the issuance of supplemental orders, it might be argued that Rule 7001 of the Federal Rules of Bankruptcy Procedure would require an adversary proceeding.[13] To forestall this argument, Vickie in fact brought her contempt proceedings in this adversary proceeding.

Ordinarily a new adversary proceeding is brought in a bankruptcy case to obtain injunctive relief under Rule 7001. However, an injunction may be sought in a pending case or adversary proceeding, if the injunction properly arises out of the subject matter of the case or adversary proceeding. In this case, this adversary proceeding was already pending between the same parties, and it arose out of the same operative facts as those involved in the contempt proceeding.[14] Thus a new adversary proceeding was not required.

## V. Conclusion

The court finds that Pierce has violated Vickie's discharge injunction in seeking and obtaining a money judgment against her in the Texas litigation. That judgment, insofar as it awards a money judgment against Vickie, is discharged. The court further concludes that Pierce is estopped to seek a money judgment in the Texas litigation, or to enforce it in any

fashion, based on representations made by his counsel in open court in this case.

---

13. Rule 7001 provides in relevant part:
The following are adversary proceedings:
. . .
(7) a proceeding to obtain an injunction. . . .

14. This procedure is akin to the supplemental pleadings procedure authorized by Rule 15(d) of the Federal Rules of Civil Procedure, which is incorporated by reference in Rule 7015 of the Federal Rules of Bankruptcy Procedure. *See generally,* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1504 (2d ed.1990).