**Blake BUSH and Mary Bush, individuals on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**LOANSTAR MORTGAGEE SERVICES, L.L.C., Defendant.**

No. C–02–5594–SC.

United States District Court, N.D. California.

March 7, 2003.

---

Irving L. Berg, Berg Law Group, Corte Madera, CA, O. Randolph Bragg, Horwitz, Horwitz & associates, Chicago, IL, Raymond R. Miller, Oakland, CA, for Blake Bush, Mary Bush.

Stephen G. Blitch, Theodore T. Ting, Reed Smith Crosby Heafey, Oakland, CA, for Loanstar Mortgagee Services, L.L.C.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

CONTI, District Judge.

### I. INTRODUCTION

On November 25, 2002, Plaintiffs filed this class action alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., and the California Unfair Business Practices Act (CUBPA), California Business and Professions Code § 17200 et seq. Now pending before this Court is Defendant's motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss this case for failure to state a claim for which relief can be granted. For the reasons set forth below, this Court GRANTS Defendant's motion.

### II. BACKGROUND

Defendant is a debt collection agency. Plaintiffs are husband and wife who, in 1999, borrowed $384,000.00 from Bank of America, N.A. (Creditor) to purchase a home in Livermore, California. As security for Plaintiffs' obligation to repay this loan, Plaintiffs executed a deed of trust to the home in favor of Creditor. Eventually, Plaintiffs defaulted on the loan, and Creditor elected, pursuant to the deed of trust, to sell Plaintiffs' home to satisfy Plaintiffs' loan obligation.

Creditor then hired Defendant to attempt to collect from Plaintiffs the amount due on the loan. In this effort, Defendant mailed to Plaintiffs two documents in one envelope. The contents of these two documents gave rise to this lawsuit.

The first document (Validation Letter) is a one-page letter from Defendant to Plaintiff Blake Bush. First Amended Complaint (FAC), Exhibit A. Although its compliance with the FDCPA's requirements is in dispute, the letter is, at the very least, an attempt to comply with these requirements. The second document (Notice of Default) covers two sides of one page, and is titled "NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST." FAC, Exhibit B. The text that comprises the first page as well as the first three sentences of the second page of the Notice of Default is expressly mandated by California Civil Code § 2924c(b)(1).

Plaintiffs contend that Defendant, in sending the Validation Letter and the Notice of Default, violated the FDCPA in the following four ways: (1) by failing to disclose effectively the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1); (2) by failing to disclose in the Validation Letter that payment of the debt was subject to the limitations of California Civil Code § 2924(c), in violation of 15 U.S.C. 1692e(2)(A); (3) by threatening in the Validation Letter to collect the debt of $385,893.00, even though it was precluded from doing so by California Civil Code 2924(c), thereby violating 15 U.S.C. § 1692e(5); and (4) by failing to disclose in the Validation Letter that Plaintiffs' $385,893.00 debt "would not be required to be paid on the sale of the trust property." FAC, paragraph 20.

Presumably for these same four reasons, Plaintiffs contend that Defendant's policy and practice of sending collection notices in the form of the Validation Letter and

the Notice of Default are unfair, unlawful, and fraudulent within the meaning of California Business and Professions Code § 17200.

## III. *LEGAL STANDARD*

▮ A motion to dismiss will be denied unless it appears that the plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco*, 792 F.2d 1432, 1435 (9th Cir.1986), *cert. Denied*, 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All material allegations in the complaint, together with all reasonable inferences therefrom, are accepted as true and construed in the light most favorable to the non-moving party. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986); *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir.1998). Moreover, "[t]o dismiss, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Plaine v. McCabe*, 797 F.2d 713, 723 (9th Cir.1986).

## IV. *DISCUSSION*

### A. *The FDCPA Claim*

Defendant contends that there are two reasons why Plaintiffs have failed to state a claim under the FDCPA. The first is that the FDCPA does not apply to this case, because the loan in question is a business loan and, therefore, not a "debt" within the meaning of 15 U.S.C. § 1692a(5). The second is that, even if the FDCPA does apply to this case, neither the Validation Letter nor the Notice of Default, taken individually or together, violates the FDCPA.

### 1. *Application of the FDCPA*

▮ The FDCPA does apply to this case. 15 U.S.C. § 1692a(5) defines a "debt" as:

> any obligation or alleging obligation to the consumer to pay money arising out of the transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

*Id.* As the statute clearly states, and as the Ninth Circuit has confirmed, the FDCPA "characterizes debts in terms of uses, covering debts incurred primarily for personal, family or household purposes." *Bloom v. I.C. System, Inc.*, 972 F.2d 1067, 1068 (9th Cir.1992). A loan to purchase one's residence is clearly a debt within the meaning of the FDCPA.

▮ Defendant's contention that the FDCPA does not apply to the loan at issue in this case is based solely upon the fact that one section of a bankruptcy petition filed by Plaintiffs characterizes the loan in question as "business," rather than "consumer/non-business." Defendant argues that this Court should take judicial notice of this bankruptcy petition, and that the statement in the bankruptcy petition judicially estops Plaintiffs from contending now that the loan is a consumer loan.

Even if this Court did take judicial notice of the bankruptcy petition, this Court finds that the petition is insufficient to support application of the judicial estoppel doctrine. Contrary to Defendant's assertion, *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778 (9th Cir.2001), does not support application of the doctrine in this case. *Hamilton* sets forth three factors for consideration when deciding whether to apply the doctrine of judicial estoppel, *Hamilton*, 270 F.3d at 785. However, in the instant case, none of those

factors supports application of the doctrine. First, Plaintiffs' current contention that the loan at issue is a consumer loan is not clearly inconsistent with the characterization of the loan in the bankruptcy petition, in part because Plaintiffs have amended their petition so that it now characterizes the loan as a consumer loan, and in part because other sections of the bankruptcy petition suggest that the loan is a consumer loan. Second, there is no risk in this case that this Court's acceptance of Plaintiffs' current position might create the perception that Plaintiffs have misled either the bankruptcy court or this Court. Third, there is no suggestion that Plaintiffs might derive an unfair advantage or impose an unfair detriment on Defendant by contending, as they do, that their home loan was a consumer loan. Therefore, this Court finds that the loan at issue in this case is a "debt" within the meaning of 15 U.S.C. § 1692a(5) and that, accordingly, the FDCPA applies in this case.

### 2. *Violation of the FDCPA*

Plaintiffs allege that Defendant has violated the FDCPA in four ways. Each of these alleged violations is based solely upon the contents of the Validation Letter and/or the Notice of Default, and there is no dispute regarding the contents of these documents. For the reasons set forth below, this Court finds that none of Plaintiffs' allegations amounts to a valid claim under the FDCPA.

 Plaintiffs' first allegation is that Defendant violated 15 U.S.C. § 1692g(a)(1) by failing to disclose effectively the amount of the debt. The crux of this allegation is that neither the Validation Letter nor the Notice of Default "explained the contradiction between the amount of $385,893.00 stated in [the Validation Letter], and dated July 12, 2002 and the amount of $12,496.63 stated in [the Notice of Default], dated June 27, 2002." FAC, paragraph 16. This

allegation fails because there is no contradiction between the two figures. It is undisputed that the Validation Letter was dated July 12, 2002, and that, as of that date, Plaintiffs: (1) were in default on their loan, and (2) owed Creditor a debt of $385,893.00. It is also undisputed that, as the Notice of Default explained, the total amount of Plaintiffs' past due payments plus permitted costs and expenses was $12,496.63 as of June 27, 2002. In short, $385,893.00 is the amount Plaintiffs could have paid on July 12, 2002, to satisfy completely their loan obligation to Creditor, and $12,496.63 is the amount Plaintiffs could have paid Creditor on June 27, 2002, to rescue their loan from default and reinstate its normal repayment terms. Just as there is no contradiction in the previous sentence, there is no contradiction between the Validation Letter and Notice of Default.

Plaintiffs correctly contend that a court must analyze a communication from a debt collector to a consumer from the perspective of the "least sophisticated debtor" when determining whether that communication violates the FDCPA. *Terran v. Kaplan*, 109 F.3d 1428, 1431–32 (9th Cir. 1997). However, there are at least two reasons why Defendant did not run afoul of this standard. First, the Notice of Default does indeed explain the relationship between the two dollar figures cited above. After explaining that Plaintiffs can bring their account into good standing by paying an amount close to $12,496.63 no later than five days before the foreclosure sale, the Notice later states:

> Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of

your property by paying the entire amount demanded by your creditor.

Notice of Default, at 1. The Validation Letter and the last paragraph of the Notice of Default clearly explain that, "the entire amount demanded by [Plaintiffs'] creditor" is $385,893.00. Second, this Court finds that even the least sophisticated debtor who borrows $384,000.00 to purchase a home must be deemed to understand the difference between: (1) the amount of money required fully to extinguish his obligation to the lender (in this case, roughly $385,000), and (2) the amount of money required to return his loan to good standing after he has missed one or more scheduled payments.

Plaintiffs' second allegation is that Defendant violated 15 U.S.C. § 1692e(2)(A) by failing to disclose in the Validation Letter that payment of the debt was subject to the limitations of California Civil Code 2924(c). 15 U.S.C. § 1692e(2)(A) prohibits a debt collector from falsely representing "the character, amount, or legal status of any debt." *Id.* Defendant's failure to disclose in the Validation Letter the limitations imposed by § 2924(c) in no way falsely represents anything. The statements in both the Validation Letter and the Notice of Default are entirely true, and there is no contradiction within either document or between the two documents.

▇▇▇ Plaintiffs' third allegation is that Defendant violated 15 U.S.C. § 1692e(5) by threatening in the Validation Letter to take legal action to collect the debt of $385,893.00 without waiting for the end of the 30-day validation period set forth in 15 U.S.C. § 1692g, even though Defendant was precluded from doing so by California Civil Code 2924(c). 15 U.S.C. § 1692e(5) prohibits a debt collector from threatening to take any action that cannot legally be taken or that is not intended to be taken. However, even if the Validation Letter can be interpreted to include a

threat to take legal action to collect the debt before the 30-day period expires, such a threat is not precluded by § 2924(c) of the California Civil Code. A debt collector is not required to wait until the end of the 30-day period to take action to collect a debt. 15 U.S.C. § 1692g(b). Therefore, a debt collector can declare a debtor to be in default and elect to sell the security for the loan within the 30-day period without violating the FDCPA. Furthermore, the fact that Plaintiffs have a right under California law to block the foreclosure sale by paying the past due payments and associated costs and fees within a certain time does not alter the fact that the § 2924(c) of the California Civil Code *required* Defendant to include in its Notice of Default an implicit threat that Creditor will sell Plaintiffs' house if Plaintiffs fail: (1) to reinstate their loan within the time provided for such reinstatement, (2) to pay Creditor the entire amount of the debt, or (3) to reach some other agreement with Creditor. Notice of Default, at 1. ("Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.").

▇▇▇ Plaintiffs' fourth allegation is that Defendant violated 15 U.S.C. § 1692e(2)(A) by failing to disclose in the Validation Letter that Plaintiffs' $385,893.00 debt "would not be required to be paid on the sale of the trust property." There are two problems with this allegation. First, failure to include this explanation in the Validation Letter does not falsely represent the character, amount, or legal status of Plaintiffs' debt. Second, Defendant is not required to explain in its Validation Letter that Plaintiffs' obligation

**1216**

to repay their loan is extinguished if Creditor ultimately exercises its right to sell Plaintiffs' home. In fact, a foreclosure sale might not extinguish Plaintiffs' obligation to repay the loan if, for example, the home sells at the foreclosure sale for less than the amount Plaintiffs owe Creditor.

### B. *The CUBPA (state) Claim*

Because Plaintiffs have failed to state a valid claim that Defendant's policy and procedure of sending collection notices in the form of the Validation Letter and the Notice of Default to Plaintiffs and to members of the general public violate the FDCPA, Plaintiffs have also failed to state a valid claim that this policy and procedure is "unlawful" within the meaning of section 17200 of the California Unfair Business Practices Act. In addition, this Court finds that Plaintiffs have also failed to state a valid claim that the policy and procedure described above is either "unfair" or "fraudulent" within the meaning of section 17200 of the California Unfair Business Practices Act.

### V. *CONCLUSION*

For the reasons set forth above, this Court finds that Plaintiffs have failed to state a claim for which relief can be granted under either the FDCPA, 15 U.S.C. § 1692 et seq., or the CUBPA, California Business and Professions Code, § 17200 et seq. Accordingly, this Court GRANTS Defendant's motion to dismiss Plaintiffs' claims.

IT IS SO ORDERED.