**In re DESERT VILLAGE LIMITED PARTNERSHIP, Debtor.**

No. 03–33228.

United States Bankruptcy Court, N.D. Ohio.

Oct. 18, 2004.

John J. Hunter, Jr., Toledo, OH, for debtor.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

Before this Court is the Objection of the Debtor–in–Possession to the Claim of Bihn Excavating, Inc. After conducting an evidentiary hearing on the DIP's objection, the Court allowed the Parties to submit Briefs in support of their respective positions. The Court is now in receipt of these memoranda, and based upon a review of the arguments made therein, together with the evidence presented at the Hearing held in this matter, the Court finds that the objection of the DIP should be Sustained in Part. Set forth below are, in accordance with Bankruptcy Rules 7052 and 9014, this Court's findings of fact and conclusions of law.

The Debtor–in–Possession, Desert Village Limited Partnership (hereinafter referred to as the "DIP"), undertook to develop a golf course and surrounding housing on certain parcels of real property. Beginning in July of 2001, Bihn Excavating, Inc. (hereinafter referred to as "Bihn") performed work for the DIP on these various parcels of property. During the course of performing its services, the DIP made numerous payments to Bihn, in all totaling $577,424.85. The next year, after being delinquent on certain invoices issued to the DIP, Bihn filed a mechanics' lien against the property constituting the golf course and surrounding parcels of property on which residential housing was to be developed.

In April of 2003, the DIP filed a petition in this Court for relief under Chapter 11 of the United States Bankruptcy Code. Bihn then filed a proof of claim asserting its status as the holder of a secured claim in the amount of $410,569.13, an amount which the principal of Bihn later admitted at the hearing was overstated by $20,000.00. This figure was based upon Bihn's position that it performed services for the DIP in the aggregate amount of $967,994.00.

### DISCUSSION

■ The claims allowance process is one of the primary functions of bankruptcy law. *In re Day*, 208 B.R. 358, 369 (Bankr. E.D.Pa.1997). As such, the DIP's objection to Bihn's claim constitutes a core proceeding over which this Court has been conferred with jurisdictional authority to enter final orders. 28 U.S.C. §§ 157(b)(2)(B); 1334.

In going forward with its objection, the DIP has attacked Bihn's proof of claim on all possible fronts: the actual validity/existence of the claim; and if the claim does exist, both its status as a secured claim and the amount of the claim. Beginning with the validity/existence of the claim, the merits of these positions are set forth below.

■ From the testimony of the DIP's principal, it is this Court's understanding that the DIP has attacked the validity/existence of Bihn's proof of claim on the grounds that compensation for its services was to take the form of ownership interest in the company; that is, in lieu of a mone-

tary payment, Bihn (and/or its principal) had agreed to take an ownership interest in the DIP's business as compensation for the remainder of its services. However, this Court has a number of strong reservations about the DIP's position. To begin with, even when the evidence is favorable to the existence of such an arrangement, caution should be exercised before forcing a party to accept, in the stead of a monetary remuneration, an equity interest in a business, it being axiomatic that the former method of payment is by far the more common form of consideration. All the same, the evidence in this case, contrary to showing that Bihn had agreed to take an ownership interest in the DIP as compensation for its services, goes the other way.

First, the general partner of the DIP admitted that it owed money to Bihn, albeit at a lesser amount than its claim—for the remainder of the services Bihn performed, thus ostensibly contradicting its own position concerning Bihn's agreement to take an equity interest in the business. Equally telling, had the DIP truly thought that it was compensating Bihn for its services by offering it an equitable interest in the business, this question naturally arises: Why was Bihn (and/or its principal) not listed in the DIP's bankruptcy petition as having an ownership interest in the business? (DIP's petition, question No. 21). Finally, it cannot be ignored that the DIP was unable to produce any written agreement showing that, in consideration for taking an ownership interest in the DIP, Bihn was to forgo cash payments for its services. Thus, for these reasons, the Court rejects the DIP's contention that Bihn (and/or its principal) had agreed to take an ownership interest in the DIP in lieu of receiving a monetary payment for its services.

Having thus determined that Bihn holds a valid claim against the DIP's bankruptcy estate, the next question becomes, what is the amount of this claim? Bihn argues that it is owed $390,569.15, offering as evidence detailed billing statements for the services it rendered. The DIP, however, while acknowledging an obligation to Bihn, set the balance due at a much lower amount: $195,000.00, as an approximate figure.

■ On the Parties' disparate figures, bankruptcy law holds that once timely filed, a proof of claim is deemed allowed unless a party in interest objects, 11 U.S.C. § 502(a); and Bankruptcy Rule 3001(f) sets forth that the claim will constitute "prima facie evidence of the validity and the amount of the claim." Thus, it is a debtor who initially bears the initial burden of going forward to produce evidence sufficient to negate the prima facie validity of the filed claim. *Morton v. Morton (In re Morton)*, 298 B.R. 301, 307 (6th Cir. BAP 2003). Once the debtor has met this burden, however, the burden of going forward then shifts back to the creditor who bears the ultimate burden of persuasion. *Id.*

In support of its burden, the DIP's objection on valuation can be grouped into two categories: (1) Bihn billing for work that was not productive; and (2) Bihn continuing to bill for services that had been either previously paid or not actually performed.

■ As it concerns the first, it is the DIP's position that Bihn moved approximately 60,000 yards of topsoil at $1.60 per yard for which there was no need to displace. From a veracity standpoint, however, the major weakness with this position is that the evidence in this case tended to show that the DIP took a very "hands off" approach in how it oversaw the work performed by Bihn. By way of example, Bihn was not kept abreast of events as the DIP's financial condition deteriorated, thus

possibly causing Bihn to incur expenses needlessly.

On the other hand, and as made very clear by the DIP, there does not exist a "signed written agreement with the DIP covering the work for which payment is sought under the Proof of Claim." (Doc. No. 108, at pg. 1). While not automatically fatal—with a court being able to use parol and other extrinsic evidence to determine the terms of a parties' contract—what cannot be ignored here is the complete lack of any substantive corroborating evidence tending to show why the topsoil needed to be removed. Particularly troublesome, when set against the total work performed by Bihn, the removal of the topsoil was anything but insignificant—at $1.60 per yard, the removal of 60,000 yards of topsoil represented $96,000.00 in services, or approximately 10% of the total services performed by Bihn. Thus, given its scope, it seems highly unusual that absolutely no evidence exists to corroborate the need for such services. Consequently, based upon this consideration, yet still finding it a rather close call, it is this Court's opinion that the weight of the evidence in this case falls in favor of the DIP. As a result, Bihn's allowed claim, after a reduction of $96,000.00, is now set at $294,569.15.

■ In addition to the issue of the topsoil, the DIP also questioned the accuracy of Bihn's claim on the grounds that Bihn continued to bill for services that had either been paid or not actually performed. In support thereof, the DIP pointed out that, besides the invoices it issued, nothing but the self-serving testimony of Bihn's principal was offered to corroborate the accuracy of the figure in its proof of claim. Second, the DIP put forth that the exhibits offered into evidence show inconsistencies. Specifically, subsequent to the time most of its work had been performed, Bihn's principal certified that all prior work had

been paid; yet afterwards a substantial balance still remained on the DIP's account with Bihn.

However, these positions, whatever their validity, do not set a method by which to compute Bihn's claim. Thus, when boiled down, the Court is still left to determine which figure—Bihn's claim, now set at $294,569.15, or the DIP's figure of $195,-000.00—is supported by the greater weight of evidence in this case. In giving this matter consideration, these considerations tip the balance in favor of Bihn: (1) as opposed to the DIP's approximate figure, Bihn accounted for his claim down to the exact penny; (2) closely related thereto, Bihn provided detailed billing statements of his services; (3) as previously mentioned, the DIP took a "hands off" approach in how it managed Bihn's work; and (4) up until the time of the instant controversy, and thus only after a precipitous decline in its financial fortune, did the DIP question Bihn's figures, having previously accepted the veracity of those previous invoices submitted to it by Bihn. Accordingly, for these reasons, Bihn will be allowed a claim in the amount of $294,569.15.

The last issue to address in this matter is whether, according to its proof of claim, Bihn may be treated as a secured creditor. Section 506—entitled Determination of Secured Status—states that a creditor may only be treated as a secured creditor to the extent that its allowed claim is "secured by a lien on property in which the estate has an interest" and then only "to the extent of the value of such creditor's interest in the estate's interest in such property." As it relates to these requirements, the only point of contention between the Parties is the former: whether Bihn holds a "lien" on the DIP's property?

■ Bankruptcy law defines a lien as a "charge against or interest in property to

secure payment of a debt or performance of an obligation[.]" 11 U.S.C. § 101(37). Such a determination is made according to applicable nonbankruptcy law, here Ohio law. *In re Farrenkopf*, 305 B.R. 382, 385 (Bankr.D.Mass.2004). As authority for the existence of its lien under Ohio law, Bihn cites to O.R.C. § 1311.01, *et seq.*, which governs the creation of mechanics' liens. In opposition to the creation of a mechanics' lien against its property, the DIP raised a number of points of opposition which, for convenience sake, will be grouped as follows: (1) untimeliness; and (2) lack of proper notice.

■ On its untimeliness argument, the DIP cites to O.R.C. § 1311.06(B)(3) which provides that an affidavit—the device creating the mechanics' lien—must be filed in the recorder's office in the county in which the improved property is located "within seventy-five days from the date on which the last of the labor or work was performed or material was furnished by the person claiming the lien." In asserting that Bihn failed to comply with this requirement, the DIP put forth that, although Bihn completed its last work on the same day in which it filed its lien, such work was confined solely to the parcels of property on which housing was to be developed, not the golf course where the last of the work performed by Bihn occurred more than 75 days prior to the time its lien was filed. As a result, the DIP maintains that no lien arose as to the golf course, the two being entirely separate projects.

As pointed out by Bihn, however, O.R.C. § 1311.08 does not require that separate liens be filed, ". . . where work or labor has been performed or material has been furnished for improvements which are located on separate tracts or parcels of land *but operated as an entire plant or concern, and erected under one general contract.*" (emphasis added). It follows, therefore, that if this section applies, a lien timely filed for purposes of O.R.C. § 1311.06, will also be timely filed for purposes of the type of property described in this provision. In arguing for the applicability of this provision, the principal from Bihn testified that his contractual relationship with the DIP, although requiring different types of work, consisted of one overall project: the development of a golf course together with the surrounding parcels of property for residential homes. The evidence in this case supports this position.

First off, there was no indication, other than some minor matters which were necessarily unique to each job, that the DIP made any concerted effort to separate those services provided by Bihn vis-a-vis the golf course versus the surrounding parcels of property. To the contrary, there was a very strong cohesiveness in the overall manner by which the DIP treated the golf course project in relationship with the development of the surrounding property on which residential homes were to be located. For example, an architectural style map entitled "Desert Village Project" introduced into evidence shows no overt delineation between the golf course and surrounding property. Also, like with its omission to list Bihn as an equity owner, the DIP's bankruptcy petition, having simply set forth a single claim held by Bihn, does not delineate between Bihn's work on the golf course against the surrounding property. *See Hamilton v. State Farm Fire & Casualty Company*, 270 F.3d 778, 783–84 (9th Cir.2001) (statements made in a bankruptcy petition may implicate doctrine of judicial estoppel).

Also, going against the separate nature of the projects, the principal of the DIP acknowledged that some of Bihn's work could not even be grouped into a separate category, having simultaneously involved both the golf course and the surrounding

property. Accordingly, for these reasons, the development of the golf course and surrounding property can be viewed under O.R.C. § 1311.08 a single "concern" and "erected under one general contract." Thus, Bihn's timely perfection of its lien against the surrounding parcels of property, also timely perfected its lien against the golf course.

The DIP's second argument against the existence of a lien concerns lack of proper notice. Under O.R.C. § 1311.07 it is provided that, "[a]ny person filing an affidavit pursuant to section 1311.06 of the Revised Code shall serve a copy of the affidavit on the owner, part owner, or lessee of the improved property or his designee, within thirty days after filing the affidavit." The method of service is set forth in O.R.C. § 1311.19, which, in relevant part, provides that service may be perfected by "[c]ertified or registered mail, overnight delivery service, hand delivery, or any other method which includes a written evidence of receipt." With respect to these notice requirements, the DIP's argument hinges on the fact that Bihn was unable to produce any evidence that, in accordance with the methods just described, it properly perfected service. Bihn, however, argues that this is a "Red Herring," pointing out that during cross-examination, the principal of the DIP admitted that it had received notice of the lien within the time constraints provided for by O.R.C. § 1311.07.

In line with Bihn's argument, § 1311.19 was recently amended so as to provide that proof of service may be established when, after all the other prerequisites for proper service are otherwise met, "[t]he person served acknowledges receipt of the notice, affidavit, or other document." § 1311.19(C)(1). Notwithstanding, this amendment was not in force at the time of the transaction at issue, and thus the DIP takes the position that those methods of service described in § 1311.19, at least before paragraph (C) was added, were intended to be the exclusive means by which proper service of a mechanics' lien could be established. Simply put, prior to its amendment, an admission in open court by the affected party is insufficient to establish proper service under § 1311.19. As authority for this position, the DIP cites to the case of *Suburban Heating Co. v. Lougher,* and the following language:

> The transcript of testimony contains at most an admission from Mr. Lougher that he was served with a mechanic's lien affidavit, but there is no definite indication as to how or when. There is evidence that Exhibit D, the subcontractor's affidavit, was served on Mr. Jewett and Mrs. Lougher and the bank, but there is a lack of evidence that a copy of Exhibit H, the Affidavit for Mechanics' Lien, which was properly filed with the county recorder, was ever served on either of the owners of the property within 30 days as required by Section 1311.07. The transcript of evidence fails to show that Exhibit H was served on anyone.

4 Ohio App.2d 343, 348, 212 N.E.2d 659 (1964).

Undoubtably, this case stands for the position that the failure to effectuate proper service under O.R.C. §§ 1311.07 and 1311.19 invalidates an otherwise properly filed mechanics' lien. However, as taken from the language at the end of the first sentence, the *Lougher* decision does not stand for the position that under the prior version of § 1311.19, proof of service could not be accomplished by an admission in open court. Rather, this language must be read simply to mean that before an admission will establish effective service, it must provide some specificity; that is, how and when the service was accomplished. In

this particular case these questions have been established with the principal from the DIP admitting that within the time frame set forth in § 1311.07, he was served with a copy of Bihn's lien.

Furthermore to hold that, prior to the passage of paragraph (C) of § 1311.19, an admission in open court was ineffective to establish service, disproportionally elevates technical form over substance. Similarly, such a reading goes completely contrary to the whole purpose of the provision: to ensure that the party affected by the lien is provided notice thereof. Consequently, while paragraph (C) of § 1311.19 covers the situation presented here—where a person admits to service—the Court does not read the addition of this provision to mean that prior to its enactment, proof of proper service of a mechanic's lien could not be accomplished by an admission of the affected party in open court.

One last point, in support of its position that Bihn does not hold a secured claim, the DIP also cited to O.R.C. § 1311.05(A). In doing so, the DIP cited to that portion of the statute which requires that "a subcontractor or materialman who performs labor work upon or furnishes material in furtherance of an improvement to real property and who wishes to preserve his lien rights shall serve a notice of furnishing ...." Here, as the DIP argues, no evidence was presented that Bihn provided a notice of furnishing.

Notwithstanding, § 1311.05(A) must be read in its totality, with this provision explicitly conditioning service of a notice of furnishing upon the prior filing of a notice of commencement in accordance with § 1311.04(B):

> Except as provided in section 1311.04 of the Revised Code and this section, a subcontractor or materialman who performs labor or work upon or furnishes material in furtherance of an improvement to real property and who wishes to preserve his lien rights shall serve a notice of furnishing, if any person has recorded a notice of commencement in accordance with section 1311.04 of the Revised Code.

Here no evidence exists that the DIP filed a notice of commencement. In this situation, O.R.C. § 1311.04(R) states in no uncertain terms that, "[i]f an owner fails to record a notice of commencement in accordance with this section, no subcontractor or materialman has to serve a notice of furnishing in accordance with section 1311.05 of the Revised Code in order to preserve his lien rights." Just as clearly, O.R.C. § 1311.05(H) provides, "[n]o subcontractor or materialman ... has to serve a notice of furnishing in accordance with this section in order to preserve his lien rights if the owner ... fails to record a notice of commencement in accordance with section 1311.04 of the Revised Code." *Accord RN Building Materials, Inc. v. C.R. Huffer Roofing & Sheetmetal, Inc.*, 85 Ohio Misc.2d 20, 683 N.E.2d 884 (C.P. 1997).

In the final analysis then, since the DIP admitted to being served with Bihn's mechanics' lien within the time frame set forth in § 1311.07, the Court holds that Bihn's lien was properly perfected under Ohio law. Thus, for purposes of § 506(a), Bihn is hereby held to hold a secured claim. As for the amount of the secured claim, the Court, for the reasons previously stated, finds that Bihn's claim of $390,569.15 should be reduced by $96,000.00, thereby leaving Bihn as the holder of a secured claim against the DIP's estate in the amount of $294,569.15.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of coun-

sel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Objection of the Debtor–in–Possession, Desert Village Limited Partnership, to the Proof of Claim submitted by Bihn Excavating, Inc., be, and is hereby, SUSTAINED IN PART.

It is **FURTHER ORDERED** that Bihn Excavating, Inc. is hereby determined to hold an allowed secured claim in the amount of Two Hundred Ninety-four Thousand Five Hundred Sixty-nine and 15/100 dollars ($294,569.15).