FILED

JUN 09 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. EC-14-1382-JuKuPa |
| BUN AUYEUNG and SOO HAN TSE, | Bk. No. 13-30919 |
| Debtors. | |
| BUN AUYEUNG; SOO HAN TSE, | |
| Appellants, | |
| v. | M E M O R A N D U M* |
| PAULA CHRISTENSEN; BARTON CHRISTENSEN; DAVID CUSICK, Chapter 13 Trustee, | |
| Appellees. | |

Argued and Submitted on May 14, 2015
at Sacramento, California

Filed - June 9, 2015

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Ronald H. Sargis, Bankruptcy Judge, Presiding

_____

Appearances: Peter G. Macaluso argued for appellants Bun Auyeung and Soo Han Tse; John D. Maxey of Dudugjian & Maxey argued for appellees Barton and Paula Christensen.**

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

** Appellee David Cusick was the chapter 13 trustee in Debtors' first chapter 13 bankruptcy case and was appointed the
(continued...)

-1-

Before: JURY, KURTZ, and PAPPAS, Bankruptcy Judges.

Memorandum by Judge Jury

Dissent by Judge Kurtz

Chapter 13[1] debtors, Bun Auyeung and Soo Han Tse (Debtors), moved under § 522(f)(1)(A) to avoid the judicial lien held by Barton and Paula Christensen (Creditors) against Debtors' homestead property. The bankruptcy court avoided the lien in part. Thereafter, the court confirmed Debtors' fourth amended chapter 13 plan which required Debtors to sell the property encumbered by Creditors' lien and use a portion of the proceeds to satisfy the remaining lien. Debtors never took any steps to sell the property and defaulted under the terms of the plan.

The bankruptcy court subsequently denied Debtors' motion to voluntarily dismiss their case and converted it to chapter 7. After Debtors received their § 727 discharge, they moved to avoid Creditors' judicial lien in its entirety, arguing that the value of the property encumbered by the lien had decreased and that the amount of their homestead exemption had increased. The bankruptcy court denied their motion on the grounds that Debtors were barred from relitigating the value of the property by the

---

[**] (...continued) successor trustee in Debtors' second chapter 13 bankruptcy case. He has not participated in this appeal.

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

doctrines of claim preclusion and merger and bar, and that their exemption was determined as of the petition date and not the date of conversion. A final decree was entered and Debtors' chapter 7 bankruptcy case was closed.

Debtors then filed this chapter 13 case and again moved to avoid Creditors' judicial lien on the same grounds asserted in their chapter 7 case. The bankruptcy court summarily denied their motion, finding that Debtors were ineligible for a discharge. Debtors moved for reconsideration, which the bankruptcy court granted in part by finding that the denial of the motion should have been without prejudice since Debtors were eligible for a discharge. Debtors filed another motion to avoid Creditors' judicial lien, which the bankruptcy court denied on the basis of judicial estoppel. Debtors appeal from that ruling and order. We AFFIRM.

## I. FACTS[2]

In September 2008, the California state court entered a judgment in the amount of $300,000 against Debtors and in favor of Creditors and other parties not before us in this appeal. The judgment allocated $144,000 of the $300,000 to Creditors. Creditors recorded an abstract of judgment in the Sacramento County Recorder's Office which perfected their lien against Debtors' homestead property located in Elk Grove, California

---

[2] The following facts have been taken from the record of this chapter 13 case and Debtors' first bankruptcy case (Bankr. Case. No. 09-35065). To the extent needed, we take judicial notice of various pleadings which were docketed and imaged by the bankruptcy court in the underlying bankruptcy cases. Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

-3-

(Property).

**A.   Debtors' First Bankruptcy Case:  Bankr. Case No. 09-35065**

Debtors filed a chapter 13 petition on July 21, 2009.[3]  In Schedule A, Debtors listed the fair market value (FMV) of the Property as $130,000.[4]  In Schedule D, Debtors listed the $300,000 judgment lien as the only lien against the Property. In December 2009, Debtors filed an amended Schedule C to claim a homestead exemption in the Property under Cal. Code Civ. Proc. (CCP) § 704.730(a)(3) for $150,000.

On November 25, 2009, Creditors filed a proof of claim (POC) asserting a secured claim for $158,854.60 based on their state court judgment and accrued interest as of the petition date.

On December 15, 2009, Debtors filed a motion to avoid Creditors' judgment lien under § 522(f)(1)(A) (First Lien Avoidance Motion).  Consistent with their Schedules, Debtors claimed a $150,000 homestead exemption and asserted that the FMV of the Property was $130,000.

Creditors opposed, contending that the FMV of the Property was $420,000 based on a January 2009 appraisal.  Creditors noted that the difference between the appraised value ($420,000) and the value assigned by Debtors as of the petition date ($130,000) was $290,000.

------

[3] The case was reassigned to the Honorable Roger H. Sargis and transferred to the Sacramento Division on January 15, 2010.

[4] Evidently, Debtors asserted that the Property was uninhabitable and they adjusted the initial FMV of $200,000 downward due to $50,000 in demolition costs and $20,000 for costs of sale.

On August 30, 2010, the bankruptcy court conducted an evidentiary hearing on valuation and found that the FMV of the Property was $290,000. Subtracting Debtors' $150,000 homestead exemption from that amount, the court concluded that Creditors' lien was avoided as to all amounts over $140,000. The bankruptcy court entered an order consistent with its ruling on the same day and that order became final (August 30, 2010 Order).

On November 14, 2011, the bankruptcy court confirmed Debtors' fourth amended chapter 13 plan. The plan provided that proceeds from the sale of the Property would be used to pay all Class 2 claimants and lien holders in full, which included Creditors. The order confirming the plan states that "pursuant to . . . § 1323, the plan is amended as follows: the real property shall be listed immediately at $290,000 and sell by September 2012."

In December 2012, the chapter 13 trustee, David Cusick, moved to dismiss the case on the grounds that Debtors were not current in their payments and had failed to sell the Property by September 2012 as required by the confirmed plan. Debtors opposed and filed a motion for voluntary dismissal.[5]

On February 25, 2013, the bankruptcy court converted

---

[5] In its July 22, 2014 findings of fact and conclusions of law denying Debtors' fourth lien avoidance motion which is the subject of this appeal, the bankruptcy court states that "Debtors pleaded with the court to allow them to dismiss the case so they could (after having improperly delayed and make [sic] affirmative misrepresentations to the court) file a new case and manufacture a larger exemption apparently not satisfied with the substantial California homestead exemption already afforded them."

-5-

Debtors' case to chapter 7. In deciding to convert the case, the court found that Debtors actively misrepresented that they would liquidate the Property, but never intended to do so, instead hoping it would appreciate in value. The bankruptcy court further found that Debtors had continued in possession of the Property without making regular monthly payments to Creditors who had a lien on the Property. Under these circumstances, the court decided that only an independent fiduciary could consider whether the estate was properly managed and what assets remained for distribution to creditors. The bankruptcy court denied Debtors' request for a voluntary dismissal.

After their case was converted, Debtors amended Schedule A, stating that the FMV of the Property was $185,000. Debtors also amended their Schedule C, listing an exemption in the Property in the amount of $175,000.[6]

In May 2013, the chapter 7 trustee filed a report of no distribution.

On June 4, 2013, Debtors received their chapter 7 discharge.

On June 5, 2013, Debtors filed a second motion to avoid Creditors' lien under § 522(f)(1)(A) (Second Lien Avoidance Motion). Debtors again asserted that the FMV of the Property was $185,000 based on an appraisal performed by David LaBella on March 14, 2013, and claimed a homestead exemption in the amount

_____

[6] CCP § 704.730(a)(3) was amended in 2009 to increase the exemption from $150,000 to $175,000 for persons over the age of 65.

of $175,000.

Creditors opposed, arguing that the FMV of the Property was previously determined to be $290,000 at the August 30, 2010 evidentiary hearing, and thus Debtors were barred from relitigating the value of the Property.

In reply, Debtors argued, without citation to any authority, that the date of valuation for the Property in the converted chapter 7 case was the date of conversion, February 25, 2013. Accordingly, Debtors asserted that they were not bound by the previous valuation.

On July 11, 2013, the bankruptcy court issued its findings of fact and conclusions of law (July 11, 2013 FFCL). The court found that exemption values are determined as of the petition date which does not change after a case is converted. The bankruptcy court further found that the August 30, 2010 Order granting Debtors' First Lien Avoidance Motion was a final order and thus Debtors were barred from relitigating the FMV of the Property by the doctrines of claim preclusion and merger and bar:[7]

> A judgment, when rendered on the merits, constitutes an absolute bar to a subsequent attempting [sic] to re-litigate the matters determined by the judgment. Cromwell v. County of Sacramento, 94 U.S. 351 (1876).
>
> Central to this claims preclusion doctrine or [sic] the concepts of merger and bar. The concept of merger holds that when a plaintiff succeeds in litigation and recovers a valid and final personal judgment, the plaintiffs [sic] claim is merged into the judgment, and the original claim and all defenses to it, whether

---

[7] Claim preclusion includes doctrines of merger and bar. See Paine v. Griffin (In re Paine), 283 B.R. 33, 38 (9th Cir. BAP 2002).

-7-

asserted or not, are extinguished. The plaintiffs [sic] rights and the defendants [sic] liabilities are thereafter determined by the judgment. If the plaintiff loses the litigation, the resultant judgment acts as a bar to any further actions by the plaintiff on the same claim, with certain limited exceptions. By definition, merger and bar prohibit claim-splitting. All facts, allegations, and legal theories which support a particular claim, as well as all possible remedies and defenses, must be presented in one action or are lost (see §§ 131.20-131.24). Moores Federal Practice, Third Edition, § 131.01. The Ninth Circuit Court of Appeals addressed the application of this principal [sic] to orders in bankruptcy court (an order approving the sale of property) in Robertson v. Isomedix, Inc. (In re International Nutronics), 28 F.3d 965 (9th Cir. 1993), cert. denied 513 U.S. 2016 (1994).

The court having entered a final order avoiding Creditors [sic] judgment lien, it cannot now be relitigated by Debtors. There remains no case or controversy for this court to exercise federal court jurisdiction, all such claims having been merged into the prior final order.

In the same ruling, Judge Sargis again commented on Debtors' conduct throughout the case. On July 15, 2013, the bankruptcy court entered a Civil Minute Order denying Debtors' Second Lien Avoidance Motion.

On August 19, 2013, the bankruptcy case was closed and a final decree was entered.

**B.  Debtors' Second Bankruptcy Case:  Bankr. Case No. 13-30919**

On August 19, 2013, Debtors filed a second chapter 13 petition.[8]  In Schedule A, Debtors valued the Property at $185,000.  In Schedule C, they claimed a homestead exemption in the Property under CCP § 704.730(a)(3) for $142,220.15.[9]

On October 1, 2013, Creditors filed a POC asserting a

---

[8] The case was assigned to the Honorable Michael S. McManus.

[9] It is unclear where this amount came from.

-8-

secured claim in the amount of $140,000.

Meanwhile, Debtors attempted to have their chapter 13 plan confirmed. Debtors proposed to fund the plan by paying $100 per month from future earnings and by obtaining a one-time gift of $13,000 from one of their children on or before November 25, 2013. Debtors reduced Creditors' claim from $158,854.60 to $7,000 and proposed to pay them $40 per month. The plan further provided that when Debtors successfully avoided Creditors' lien in their yet to be filed motion, they would pay Creditors in full by a lump sum distribution on or before December 2013.

The appointed chapter 13 trustee, Jan P. Johnson, objected to confirmation of the plan on the grounds that Debtors had failed to provide a copy of their federal tax returns for the tax year ending before the filing of the petition and the plan failed to specify a monthly payment for administrative expenses. The trustee also maintained that the feasibility of the plan depended on the granting of Debtors' motion to avoid Creditors' lien and they had not yet filed such a motion. According to the trustee, if their motion was unsuccessful, the court could deny confirmation.

Creditors also objected to Debtors' plan, contending that the plan was not proposed in good faith and did not provide for their secured claim. Creditors further argued that Debtors had not filed their petition in good faith.

On October 14, 2013, Debtors filed their third motion to avoid Creditors' lien (Third Lien Avoidance Motion). This motion was virtually identical to the prior motion filed in their chapter 7 case. Debtors again valued the Property at

$185,000 and claimed a $175,000 homestead exemption. Creditors opposed, contending that Debtors' Third Lien Avoidance Motion was barred by the doctrines of claim and issue preclusion and that Debtors had filed their petition in bad faith.

On November 12, 2013, Judge McManus held a hearing on the chapter 13 trustee's objections to confirmation of Debtors' plan.[10] The court sustained the chapter 13 trustee's objections and denied confirmation. The bankruptcy court also denied Debtors' Third Lien Avoidance Motion finding:

> Because the debtor has received a chapter 7 discharge within 4 years of this case, they will not receive a discharge of any debts in this case. See 11 U.S.C. § 1328(f)(1). Therefore, absent payment in full of a claim, it will survive the completion of the plan. The same will be true of any lien securing a claim. While it might be temporarily stripped off its collateral, in whole or in part, during the pendency of this chapter 13 case, because the court will not be entering a discharge order to conclude the case, the lien will be revived after completion of the plan payments. Accord In re Victoro 454 B.R. 759 (Bankr. S.D. Cal. 2011), affirmed 470 B.R. 545 (S.D. Cal. 2012). This is because, when a chapter 13 case does not end in a discharge, the only alternative is dismissal or conversion to another chapter. In this case, conversion is not an option given the prior discharge. Dismissal is the only other alternative method of ending the case. Id. and see 11 U.S.C. § 1307(c), 1328. Upon dismissal, any lien avoided pursuant to section 522(f) will be reinstated. See 11 U.S.C. § 349(b)(1)(B).
>
> Because it is certain that the debtor will not receive a discharge, that the case will be dismissed when all payments are completed, that the judicial lien will be revived upon dismissal, and that the plan does not provide for payment in full of the Christiensens' [sic] lien, there is no point in avoiding the lien or confirming this plan.

---

[10] The next day, Debtors' bankruptcy case was transferred to Judge Sargis, the appointed chapter 13 trustee resigned, and David Cusick was appointed the successor trustee.

-10-

On November 15, 2013, the bankruptcy court entered a Civil Minute Order denying Debtors' Third Lien Avoidance Motion.

On November 22, 2013, Debtors filed a motion for reconsideration of the order sustaining the chapter 13 trustee's objection to their plan, the order denying their Third Lien Avoidance Motion, and the order on objection to confirmation by Creditors.[11] Debtors maintained that they provided their most recent tax returns to the chapter 13 trustee and that the plan provided for payment of their attorney not to exceed $5,000. Debtors also argued that the time period between their first chapter 13 case filed on July 21, 2009, and this case filed on August 19, 2013, was more than four years. Thus, Debtors maintained that they were entitled to a discharge.

David Cusick, the successor chapter 13 trustee, opposed, contending, among other things, that Debtors had defaulted under the proposed plan.

On December 10, 2013, the Honorable Christopher M. Klein heard Debtors' motion for reconsideration. Judge Klein noted the history in the case and ruled that there were no grounds to vacate the prior orders under Civil Rule 60(b). However, the court opined that it appeared the motions should have been denied without prejudice:

> The grounds for denying the motions appears to have been based substantially on the findings of this court concerning the conduct of the Debtors in the prior

[11] The order sustaining Creditors' objection to confirmation of the plan was not entered until November 27, 2013. The appointed chapter 13 trustee, Jan P. Johnson, resigned prior to submitting an order. Therefore, Debtors' motion for reconsideration of the various orders was premature.

-11-

case. The prior judge in this case correctly understood those rulings. However, it appears that the denials [sic] were summarily denied and may be based on a less than complete record presented by the Debtors. The court concludes that if this judge had been ruling on the substance of the motions, the denials would have been without prejudice.

In a footnote, Judge Klein further observed:

It also appears that the rationale for the prior rulings was based on that judges [sic] conclusions that there can be no Chapter 20 bankruptcy cases (Chapter 7 followed by a Chapter 13, in which no discharge can be granted). First, this judge disagrees with that conclusion. See In re Frazier, 448 B.R. 803 (Bankr. ED Cal. 2011), affd., 469 B.R. 803 (ED Cal. 2012) (discussion of lien striping in Chapter 13 case), and Martin v. CitiFinancial Services, Inc. (In re Martin), Adv. No. 12-2596, 2013 LEXIS 1622 (Bankr. E.D. CA 2013). Secondly, it appears that while the prior judge correctly understood the less than stellar conduct of the Debtors in the prior case, the computation of time between the first bankruptcy case being filed, July 21, 2009 and the filing of the current case, August 19, 2013, is more than four years.

The bankruptcy court stated that it would issue an amended order on the lien avoidance, correcting it to state that the denial of the motion was without prejudice. The court denied the balance of the motion and noted that if Debtors wanted to proceed with confirmation of their chapter 13 plan they could file an amended plan, motion to confirm, and supporting evidence. On December 13, 2013, the bankruptcy court entered a Civil Minute Order granting Debtors' motion for reconsideration in part.

Meanwhile, the chapter 13 trustee filed a motion to dismiss Debtors' case for failure to make plan payments. The bankruptcy court heard the motion on January 8, 2014, and denied it without prejudice because the trustee confirmed at the hearing that the $13,000 lump-sum payment as required under the plan had been made.

Creditors also objected to Debtors' homestead exemption in the amount of $175,000. On January 28, 2014, the bankruptcy court overruled the objection without prejudice on the grounds that neither issue nor claim preclusion barred Debtors from claiming the higher exemption amount since the amount of the exemption was not at issue in the First Lien Avoidance Motion or evidentiary hearing that resulted in the August 30, 2010 Order. The court noted, however, that other theories may exist as to why Debtors should not be asserting the higher exemption amount, but those theories were not before the court.

On January 29, 2014, Debtors filed a motion seeking confirmation of their plan and also filed their fourth motion to avoid Creditors' lien under § 522(f)(1)(A) (Fourth Lien Avoidance Motion). Thereafter, Debtors' Fourth Lien Avoidance Motion tracked with the confirmation process.

Debtors' Fourth Lien Avoidance Motion was virtually identical to their prior two motions. They again asserted the FMV of the Property was $185,000, claimed a homestead exemption in the amount of $175,000, and asserted that the equity in the Property was no more than $7,000 for purposes of lien avoidance.

Creditors opposed, arguing that Debtors must be barred from obtaining any further avoidance of their lien because the claim had been merged into judgment and the doctrines of claim and issue preclusion, double recovery and judicial estoppel barred their request. On all these bases, Creditors maintained that Debtors' Fourth Lien Avoidance Motion should be denied in its entirety and with prejudice.

In reply, Debtors argued that claim preclusion did not

-13-

apply because the evidence presented was based on an entirely different target date, value date, exemption date, and type of discharge and, therefore, was not the same claim. Debtors further argued that Creditors' double recovery theory did not apply between a chapter 7 case and a chapter 13. Finally, Debtors asserted that equitable considerations were inapplicable to the formula under § 522(f). Debtors noted that they were eligible for a discharge and for the exemption claimed, and they provided evidence of the Property's value, which was undisputed.

Judge Sargis held an initial hearing on plan confirmation and Debtors' Fourth Lien Avoidance Motion on March 4, 2014. The matters were continued several times to allow time for discovery, if any, related to plan confirmation, and to allow the parties to brief the issue whether judicial estoppel applied to Debtors' Fourth Lien Avoidance Motion.

On July 22, 2014, Judge Sargis issued Civil Minutes denying confirmation of Debtors' plan. On the same day, the court issued Civil Minutes denying Debtors' Fourth Lien Avoidance Motion. There, the bankruptcy court stated:

> The court has denied the Debtors' motion to confirm a plan in this case, determining that (1) the Debtors do not qualify as Chapter 13 Debtors, (2) the bankruptcy case has not been filed in good faith, (3) the bankruptcy plan has not been proposed in good faith, and (4) the Debtors have not prosecuted the bankruptcy case in good faith. Therefore, there is no reason for the court to proceed with causing the Creditor, Debtors, and the court to conduct further hearings on this Motion, as there appears to be no legal reason for doing so.

While these findings related to Debtors' motion for confirmation of their plan, at another point, the court said:

> The Debtors are attempting to pick the best from all

-14-

worlds. They get their prior Chapter 13 case converted to Chapter 7 due to their misconduct. They file a new Chapter 13 case, providing a di minimis [sic] payment, premised on having obtained a discharge in the prior case. Then they seek to take away the lien of Christensen, paying them nothing as an unsecured claim. The Debtors [sic] failure of good faith has continued to the present case.

The court also referred to its July 11, 2013 FFCL issued in Debtors' prior case and then discussed application of judicial estoppel:

The court finds that the equitable doctrine of judicial estoppel encompasses this very situation. The court must preserve the integrity of the judicial process, and Debtors clearly are attempting to abuse the process by filing a sham Chapter 13 plan and avoiding the lien of the Christensen [sic]. Debtors filed this bankruptcy after the dismissal[12] of the prior bankruptcy, admitting that they would be able to reap the benefit of a higher homestead exemption if they were to refile. Bankr. E.D. No. 09-35065, Civil Minutes, Dkt. 214. The Debtors are not entitled to reap the benefits of an increased exemption and therefore avoiding more of the Creditors['] lien based on their prior bad faith.

While the Debtor [sic] attempt to disengage the current bankruptcy filing from their prior case, and their conduct in that case, the federal courts are not so nearsighted. The Debtors intentionally and willfully misrepresented to this court the terms of their Chapter 13 Plan. The court relied on their statements under penalty of perjury in confirming the Chapter 13 Plan in the prior case. Through their misrepresentations, the Debtors managed to confirm a plan and exhaust four years of judicial time and resources. This Chapter 13 case is one more step by the Debtors in their plan to delay, abuse (both the Creditors and the court), avoid performing, not following through with the obligations of a Chapter 13 debtor, and taking what they want, when they want it.

These Debtors willfully and intentionally abused the Bankruptcy Code in the prior case, breached the order confirming the Chapter 13 Plan and failed to comply

---

[12] The chapter 13 case was converted, not dismissed, and Debtors received their chapter 7 discharge.

-15-

with the Chapter 13 Plan for the marketing and sale of the property which secures the Christensen claim. Through misrepresentation and intentional delay, while having committed to pay Christensen several years ago, the Debtors have hung on to the property gambling on a rising real estate market. It further appears, and the court so concludes, that the Debtors intentionally misrepresented the plan in the prior case, misrepresented that they would prosecute the plan to sell this Property that secures the Christensen claim, and then sought to dismiss the prior case as part of of a strategy to not only gamble on the real estate market, but obtain a higher exemption due to the passage of time.

The Debtors['] strategy was to not perform the Chapter 13 Plan in the prior case, going as far (or doing so little) as not engaging an active real estate broker to market and sell the property necessary to fund their Chapter 13 Plan. When caught in their deception, the Debtor[s] and their counsel feigned ignorance that they were required to hire a broker and sell the property notwithstanding the express term stated in the order confirming the Plan which was prepared by Debtors' counsel.

The Debtors, now are not satisfied with the arguments they made, the positions they took, the rulings made by the court after an evidentiary hearing, and the relief they obtained in the prior evidentiary hearing and bankruptcy case. They want to relitigate the issues, putting the court and Creditor to more cost and expense. Quite likely, if they do not like the result from a new evidentiary hearing, the Debtors will just file another case and re-relitigate the matter.

It is proper for the court to apply judicial estoppel to the Debtors in their repeated quest to abuse the Bankruptcy Code and federal judicial process. The Debtors['] strategy of repeatedly litigating the issue in a series of bankruptcy cases, changing what they want puts the Debtors at an unfair advantage to the Christensen [sic].

The bankruptcy court entered a Civil Minute Order denying Debtors' Fourth Lien Avoidance Motion without prejudice on July 28, 2014. Debtors filed a timely notice of appeal.

On December 22, 2014, the Panel issued an Order Re: Finality since the bankruptcy court had entered the order

appealed from without prejudice. Debtors responded by filing a motion for leave to appeal, which the Panel granted to the extent it was necessary.

## II.  JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(K).  We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUE

Whether the bankruptcy court erred by denying Debtors' Fourth Lien Avoidance Motion.

## IV.  STANDARD OF REVIEW

We review the bankruptcy court's application of the doctrine of judicial estoppel to the facts of this case for an abuse of discretion.  <u>Hamilton v. State Farm Fire & Cas. Ins. Co.</u>, 270 F.3d 778, 782 (9th Cir. 2001).  The bankruptcy court abuses its discretion when it fails to identify and apply "the correct legal rule to the relief requested," <u>United States v. Hinkson</u>, 585 F.3d 1247, 1263 (9th Cir.2009) (en banc), or if its application of the correct legal standard was "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'"  <u>Id.</u> at 1262.

We may affirm on any ground supported in the record. <u>ASARCO, LLC v. Union Pac. R. Co.</u>, 765 F.3d 999, 1004 (9th Cir. 2014).

## V.  DISCUSSION

**A.  Scope of the Appeal**

Debtors argue in their opening brief that the equitable remedy of judicial estoppel is not applicable and that they are

-17-

entitled to their fresh start in this new, independent chapter 13 case. Creditors expand the issues on appeal, asserting that the doctrine of claim preclusion also bars Debtors' Fourth Lien Avoidance Motion and that the bankruptcy court properly denied Debtors' motion due to their bad faith. Debtors responded to the arguments raised by Creditors in their reply brief. To the extent Debtors might consider themselves to be making additional arguments by responding to Creditors' arguments in their reply brief, they are mistaken. Such arguments are waived. See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001) ("[I]ssues which are not specifically and distinctly argued and raised in a party's opening brief are waived."); See Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc., 122 F.3d 1211, 1217 (9th Cir. 1997) (we limit our review to issues argued in a party's opening brief). Because the only issue raised by Debtors in their opening brief concerns the application of judicial estoppel, and we affirm on this basis, we need not address Creditors' arguments on claim preclusion.

**B.   Judicial Estoppel:   Legal Standards**

"Judicial estoppel is a flexible equitable doctrine that encompasses a variety of abuses, one form of which is preclusion of inconsistent positions that estops a party from gaining an advantage by taking one position and then seeking another advantage from an inconsistent position." Cheng v. K & S Diversified Invs., Inc. (In re Cheng), 308 B.R. 448, 455 (9th Cir. BAP 2004), aff'd, 160 Fed.Appx. 644 (9th Cir. 2005). "A court invokes judicial estoppel not only to prevent a party from

-18-

gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" Hamilton, 270 F.3d at 782. To that end, the Ninth Circuit has routinely inquired into the intent of the party asserting an inconsistent position in cases outside of the bankruptcy context. "Judicial estoppel applies when a party's position is 'tantamount to a knowing misrepresentation to or even fraud on the court.'" Johnson v. State of Or., 141 F.3d 1361, 1369 (9th Cir. 1998).

"[A] party puts the integrity of the judicial process at risk not only when it knowingly lies but when it takes a position in the short term knowing that it may be on the verge of taking an inconsistent future action." Adelphia Recovery Trust v. HSBC Bank USA (In re Adelphia Recovery Trust), 634 F.3d 678, 696 (2d Cir. 2011). "[T]he proper focus is on the objective conduct of a party or its counsel." Id. "[I]n considering whether to apply judicial estoppel a court must focus on the conduct of the party to be estopped, not the party seeking estoppel." Id. at 698. "[A]lthough a court is unlikely to be asked to apply judicial estoppel when no party has been prejudiced, it is unfair **advantage** to the potentially prejudiced party's adversary that is the touchstone of the doctrine." Id. at 698-99 (emphasis in original).

As an equitable doctrine, judicial estoppel is not easily defined. However, three factors are relevant to its application. Hamilton, 270 F.3d at 782-83 (citing N.H. v.

-19-

*Maine*, 532 U.S. 742, 750 (2001)). First, a party's position in the second matter must be "clearly inconsistent" with it's position in the first matter. Id. at 782. Second, a court must have accepted the party's earlier position. Id. at 782-83. The third consideration is whether the party asserting an inconsistent position "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Id. at 783.

**C.   Analysis**

Debtors assign error to the bankruptcy court's decision to apply the doctrine based on Debtors' bad faith in their prior bankruptcy case. According to Debtors, their bad faith had already been redressed by the bankruptcy court's denial of their request for a voluntary dismissal, conversion of their case to chapter 7, and denial of their Second Lien Avoidance Motion in the converted chapter 7. Apparently, in Debtors' view, they already paid the price for their alleged bad faith. Therefore, Debtors maintain that they are entitled to seek the avoidance of Creditors' lien in this case as authorized by the plain language of the Bankruptcy Code and obtain their fresh start. Debtors conclude that the remedy of judicial estoppel is not applicable under these circumstances and especially when the bankruptcy court brought up the theory sua sponte.

We are not persuaded. First, judicial estoppel not only bars inconsistent positions taken in the same litigation, but "bar[s] litigants from making incompatible statements in two different cases." Hamilton, 270 F.3d at 783 (9th Cir. 2001). Second, the record supports the conclusion that the bankruptcy

-20-

court did not abuse its discretion in applying the doctrine of judicial estoppel as discussed below.

Turning back to the three factors that guide application of judicial estoppel, we conclude that they are all met. As to the first factor - inconsistent positions - Debtors' position in their Fourth Lien Avoidance Motion was inconsistent with their earlier position that they would sell the Property to pay off the remaining balance on Creditors' lien. By representing that they would sell the Property, Debtors left the bankruptcy court and Creditors with the distinct, and false, belief that Debtors would follow through with the sale.[13] Further, it was this representation that led to confirmation of Debtors' fourth amended chapter 13 plan. Yet, the record shows that after confirmation of their plan, Debtors never took any steps to market or sell the Property. Debtors' conduct was thus inconsistent with their representations to the bankruptcy court that they would sell the Property by a certain date.

Debtors engaged in a course of conduct inconsistent with their representation ever since. They defaulted on their confirmed chapter 13 plan and then sought the voluntary dismissal of their case. After the bankruptcy court denied dismissal and converted the case, Debtors received their discharge and filed another motion to avoid Creditors' lien

---

[13] At oral argument, Debtors' counsel explained that Debtors allegedly "got mad" at Creditors because Creditors had told them they did not have any personal property of Debtors. But then, when Debtors threatened Creditors with sanctions for violating the automatic stay, Creditors returned personal property to Debtors. However, the reason Debtors intentionally defaulted under their confirmed plan is not relevant.

based on a higher exemption and decreased property value, which the bankruptcy court denied. On the same day they received their discharge, Debtors initiated this chapter 13 case and again sought to avoid Creditors' judicial lien on the same grounds asserted in their chapter 7. At the same time, Debtors proposed a chapter 13 plan which would be largely funded by a gift from one of their children and which did not provide for Creditors' unsecured claim.

Viewed objectively, Debtors' conduct and position in their Fourth Lien Avoidance Motion and proposed chapter 13 plan in this case is clearly inconsistent and cannot be reconciled with Debtors' earlier representation that they would sell the Property by a certain date and pay Creditors $140,000. Undoubtedly, both the bankruptcy court and Creditors would have approached the confirmation process differently in the prior case had they known Debtors had no intention of listing the Property for sale or paying Creditors the balance on their lien.

The second criterion for judicial estoppel — that the earlier position have been adopted in some manner by the court — is easily satisfied here, as Debtors' representation that they would sell the Property and pay off Creditors' lien was critical to the bankruptcy court's willingness to confirm Debtors' fourth amended plan. The bankruptcy court adopted Debtors' former position and accepted the accuracy of their representation that they would sell the Property.

The third requirement that is said to be the touchstone of the judicial estoppel doctrine — the unfair advantage to the potentially prejudiced party's adversary — is also met. The

-22-

record shows that Debtors would gain a significant unfair advantage if allowed to further litigate the lien avoidance issue in this case after obtaining confirmation of their prior chapter 13 plan by misrepresenting that they would sell the Property by a certain date and pay off Creditors' lien. Debtors deceived the bankruptcy judge who relied on their misrepresentation in deciding to confirm a plan which they never intended to honor.

Judicial estoppel is concerned with the ability of the courts to render their decisions based on faithful representations. Allowing Debtors to proceed with the Fourth Lien Avoidance Motion in this case would clearly undermine the integrity of the judicial process, especially when the bankruptcy court explicitly found that it was misled by Debtors' misrepresentations in the prior case.

Finally, Debtors complain that the bankruptcy court raised the theory of judicial estoppel sua sponte. However, it was Creditors who raised the issue in opposition to Debtors' Fourth Lien Avoidance Motion. Even so, "judicial estoppel . . . can be raised by courts sua sponte, because judicial estoppel concerns the integrity of the judicial system independent of the interest of the parties." See Fed. Commc'ns Comm'n v. Airadigm Commc'ns, Inc. (In re Airadigm Commc'ns, Inc., 616 F.3d 642, 661 n.14 (7th Cir. 2010); Kaiser v. Bowlen, 455 F.3d 1197, 1205 (10th Cir. 2006); Grigson v. Creative Artists Agency LLC, 210 F.3d 524, 530 (5th Cir. 2000). The bankruptcy court here gave the parties the opportunity to brief the issue and the opportunity for oral argument. Therefore, Debtors had a fair opportunity to argue

-23-

that the doctrine did not apply.  Under these circumstances, even if the bankruptcy court had raised the issue sua sponte, that would not change the outcome of this case.

**D.    The holding in <u>Law v. Siegel</u> does not apply.**

While no party had briefed the issue, at the hearing on this matter we raised the applicability of <u>Law v. Siegel</u>, --- U.S. ----, 134 S.Ct. 1188 (2014) to this situation as possibly deciding the issue in Debtors' favor as a matter of law.  In <u>Siegel</u>, the validity of the debtor's claim of exemption was not directly contested or challenged; rather, the issue was whether the bankruptcy court had authority under § 105 to "surcharge" an already allowed exemption because of the debtor's bad acts.  <u>Id.</u> at 1196.  In the end, the Supreme Court held that the general equitable powers of § 105(a) did not provide authority for judge-made exceptions to explicit mandates of the Bankruptcy Code.  There, since § 522(k) explicitly prohibited the use of exempt property to satisfy administrative expenses such as attorney fees, the bankruptcy court was not authorized under § 105(a) to order otherwise.

Notwithstanding <u>Siegel</u>, we conclude there is a material and decisive difference between the bankruptcy court not having the authority under § 105(a) to surcharge a previously allowed and unobjected-to exemption, and not having the authority to deny Debtors another bite at the apple in avoiding Creditors' judicial lien based on the equitable doctrine of judicial estoppel.  As noted, Debtors intentionally defaulted under their confirmed plan by not taking any steps to sell the Property, followed by further attempts to virtually eliminate the

-24-

remainder of Creditors' judicial lien, while at the same time foregoing any payments to Creditors. Applying Siegel in this situation would undermine the very basic need of the bankruptcy court to maintain and enforce the integrity of the bankruptcy system by protecting against litigants who play fast and loose with the courts under circumstances such as this. To apply Siegel to this situation would render the bankruptcy court virtually powerless to deny any motion tangentially related to a debtor's exemption. Accordingly, the reach of the holding in Siegel cannot be construed to be that broad.

## VI. CONCLUSION

For the reasons stated above, we AFFIRM.

DISSENT BEGINS ON NEXT PAGE

-25-

KURTZ, Bankruptcy Judge, Dissenting:

In upholding the bankruptcy court's judicial estoppel ruling, the majority unnecessarily ventures into the perilous world of bankruptcy court equitable powers. In Law v. Siegel, 134 S. Ct. 1188, 1194-95 (2014), the United States Supreme Court held that the bankruptcy court exceeded the limits of its statutory and inherent authority when it surcharged the debtor's allowed homestead exemption to pay for attorney fees incurred by the estate as a result of the debtor's dishonesty. Here, the bankruptcy court employed the equitable doctrine of judicial estoppel to deny the debtors' statutory entitlement to avoid liens that impaired their exemption rights. The majority decision deftly limits the scope of Siegel by identifying it as a case dealing solely with the bankruptcy court's equitable powers under § 105, as opposed to the case at bar, which deals with a specific equitable doctrine presumably available to all courts in the interest of protecting the integrity of the judicial process. While I understand my colleagues desire to limit Siegel, I do not believe the appropriate case for that decision is before us.

In the debtors' first chapter 13 case, the bankruptcy court confirmed a chapter 13 plan that provided for the sale of the debtors' residence, after partially granting the debtors' motion to avoid the creditors' judgment lien. Based upon the value of the debtors' residence, the court ruled that the lien only partially impaired their homestead exemption. After some time, the chapter 13 trustee moved to dismiss or convert the case

-1-

because the debtors had defaulted on the plan by missing payments and failing to list their residence for sale. The bankruptcy court converted the case, emphasizing the debtors' failure to list the residence and questioning whether the debtors ever intended to comply with their plan. In the chapter 7 case, the debtors renewed their motion to avoid the creditors' lien but the court denied the motion. The debtors received a chapter 7 discharge.

Shortly thereafter, the debtors filed a second chapter 13 case, which included a plan providing for the retention of their residence. See, e.g., In re Frazier, 448 B.R. 803, 808-10 (Bankr. E.D. Cal. 2011), aff'd, 469 B.R. 889 (E.D. Cal. 2012); In re Okosisi, 451 B.R. 90, 97-100 (Bankr. D. Nevada 2011). They again moved to avoid the creditors' judgment lien, arguing that based upon current values and an increased homestead exemption, the lien impaired their homestead exemption. This second chapter 13 case raised an issue of bad faith – specifically, whether it was filed for a legitimate bankruptcy purpose or merely to avoid the creditors' judgment lien. See Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1225 (9th Cir. 1999); In re Tran, 431 B.R. 230, 237-38 (Bankr. N.D. Cal. 2010), aff'd, 814 F.Supp.2d 946 (N.D. Cal. 2011). When the case came on for confirmation, the bankruptcy court considered the motion to confirm the chapter 13 plan and the motion to avoid the judgment lien at the same time. Denying the motion to confirm, the court ruled that the case had not been filed in good faith, the plan had not been proposed in good faith, and the debtors had not prosecuted the case in good faith. Denying the motion

-2-

to avoid the lien without prejudice, the court ruled that judicial estoppel barred the motion – which was premised on their retention rather than their sale of the residence. The debtors appealed the order denying the motion to avoid lien, which required an order from this court granting leave to appeal.

A bankruptcy court's finding that a case has been filed for an improper purpose inexorably leads to dismissal or conversion. Marsch v. Marsch (In re Marsch), 36 F.3d 825, 829 (9th Cir. 1994). In Marsch, the bankruptcy court found that the debtor's chapter 11 case had been filed in bad faith and ordered that it be dismissed, but delayed the effective date of the order for sixty days so that the debtor could liquidate assets to pay creditors. Id. at 827. On appeal, the Ninth Circuit characterized the order allowing the case to continue for sixty days as error, stating that "immediate dismissal was the only appropriate course once the court found that the petition was filed without a legitimate purpose." Id. at 829. Likewise, once the bankruptcy court here decided that the debtors' second chapter 13 case had been filed in bad faith, the court was required to enter an order under § 1307(c) dismissing or converting the case. There was no reason or purpose for the court to decide whether the equitable doctrine of judicial estoppel barred debtors' motion to avoid the creditors' judgment lien.

I understand that the issue before us is not whether the bankruptcy court was required to grant relief under § 1307(c). Rather, the issue before us is judicial estoppel. But that is

-3-

an issue the bankruptcy court should not have reached and for which we should not have granted review. Accordingly, I respectfully dissent. I would vacate the order of this court granting review and dismiss this appeal.